**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LISA R. HEBBRING,
            *Appellant,*

            v.

U.S. TRUSTEE,

            *Appellee.*

No. 04-16539

D.C. No.
CV-03-00612-HDM

OPINION

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Submitted May 19, 2006*
San Francisco, California

Filed September 11, 2006

Before: Pamela Ann Rymer and Kim McLane Wardlaw,
Circuit Judges, and James Ware,** District Judge.

Opinion by Judge Wardlaw

---

*This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation.

**COUNSEL**

Christopher P. Burke, Reno, Nevada, for the debtor-appellant.

Nicholas Strozza, William B. Cossitt, Office of the U.S. Trustee, U.S. Department of Justice, Reno, Nevada; Donald F. Walton, P. Matthew Suko, Mark A. Redmiles, Executive Office for U.S. Trustees, U.S. Department of Justice, Washington, D.C., for the trustee-appellee.

**OPINION**

WARDLAW, Circuit Judge:

We must decide whether a debtor seeking protection under Chapter 7 of the Bankruptcy Code may ever include voluntary contributions to a retirement plan as a reasonably necessary expense in calculating his disposable income. We hold that the Bankruptcy Code does not disallow such contributions per se, but rather requires courts to examine the totality of the debtor's circumstances on a case-by-case basis to determine whether retirement contributions are a reasonably necessary expense for that debtor. In this case the bankruptcy court did not clearly err in finding that Lisa Hebbring's voluntary retirement contributions are not a reasonably necessary expense based on her age and financial circumstances, and thus that she has sufficient disposable income to repay her creditors. We therefore affirm the district court's decision affirming the bankruptcy court's dismissal of Hebbring's petition on the ground that allowing her to proceed under Chapter 7 would be a substantial abuse of the Code.[1]

---

[1]This case arose prior to the enactment and effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAP-

# I

Lisa Hebbring filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Nevada on June 5, 2003, seeking relief from $11,124 in consumer credit card debt. Her petition and accompanying schedules show that Hebbring owns a single-family home in Reno, Nevada valued at $160,000, on which she owes $154,103; a 2001 Volkswagen Beetle valued at $14,000, on which she owes $18,839; and miscellaneous personal property valued at $1,775. Hebbring earns approximately $49,000 per year as a customer service representative for SBC Nevada. Her petition reports monthly net income of $2,813 and monthly expenditures of $2,897, for a monthly deficit of $84. In calculating her income, Hebbring excluded a $232 monthly pre-tax deduction for a 401(k) plan and an $81 monthly after-tax deduction for a retirement savings bond. When she filed for bankruptcy Hebbring was thirty-three years old and had accumulated $6,289 in retirement savings.

The United States Trustee ("Trustee") moved to dismiss Hebbring's petition for substantial abuse, *see* 11 U.S.C. § 707(b), arguing that she should not be allowed to deduct voluntary retirement contributions from her income and that her recent paystubs showed that her gross income was higher than she had claimed. As a result, the Trustee contended, Hebbring's monthly net income was actually $3,512, leaving her $615 per month in disposable income, sufficient to repay 100% of her unsecured debt over three years.

Opposing the Trustee's motion, Hebbring argued that her recent paystubs were not representative of her monthly

CPA), Pub. L. No. 109-8, 119 Stat. 23, and BAPCPA's amendments to the Bankruptcy Code are not relevant to the issues before us. Accordingly, all references herein are to the pre-BAPCPA Code in effect when Hebbring's petition was filed. 11 U.S.C. §§ 101-1330 (2000).

income because they included overtime and premium wages received during a one-time sales promotion. She further stated that her petition mistakenly omitted veterinary expenses and homeowner's association and insurance fees, and under-reported her monthly food expense by $200 to $250. She included receipts to corroborate these claims, but she never amended her expense schedule.

The bankruptcy court granted the Trustee's motion to dismiss, stating in relevant part:

> [Hebbring's retirement contributions] wouldn't be meaningful if she owed fifty thousand dollars. But she doesn't owe that much. . . . She only owes a small amount of money. . . . She's not an older person. She's a young person. . . . I have consistently held that putting away money in 401[k]'s is inconsistent with what you're trying to do . . . . You can't be looking after yourself and saving money at the expense of your creditors . . . . [S]he has disposable income that she's otherwise trying to save through different plans; [a]nd she is also using part of her money to support her animals; [a]ll of which, I think she can pay something on account of her creditors . . . . I think it would be an abuse of Chapter 7 for her to be able to discharge all these debts and not pay something to these creditors . . . . [a]nd so I am going to grant the motion to dismiss unless within thirty days she files a Chapter 13 and agrees to pay . . . a meaningful amount to the creditors.

Hebbring appealed the dismissal to the Ninth Circuit Bankruptcy Appellate Panel. The Trustee transferred the appeal to the United States District Court for the District of Nevada, which affirmed the bankruptcy court. Hebbring filed this appeal challenging, *inter alia*, the bankruptcy court's finding that her contributions to her 401(k) plan and savings bond are not a reasonably necessary expense.

## II

We have jurisdiction pursuant to 28 U.S.C. § 158(d). On appeal from a district court's affirmance of a bankruptcy court decision, we independently review the bankruptcy court's decision, without giving deference to the district court. *In re Cossu*, 410 F.3d 591, 595 (9th Cir. 2005). We review a bankruptcy court order dismissing a Chapter 7 case for abuse of discretion; legal conclusions are reviewed de novo, and factual findings are reviewed for clear error. *In re Price*, 353 F.3d 1135, 1138 (9th Cir. 2004). We review for clear error a bankruptcy court's fact-intensive determination that an expense or property interest is not reasonably necessary for a debtor's support. *See In re Bernard*, 40 F.3d 1028, 1033 (9th Cir. 1994).

## III

The purpose and structure of the Bankruptcy Code, as well as our precedent, compel the conclusion that voluntary contributions to a retirement plan may be a reasonably necessary expense for some debtors. Courts must therefore conduct a fact-specific inquiry to determine whether a debtor who saves for retirement at the expense of his creditors may nevertheless proceed under Chapter 7. The bankruptcy court erred in suggesting that voluntary retirement contributions are per se not reasonably necessary. However, the bankruptcy court's alternative finding that Hebbring's retirement contributions are not reasonably necessary based on her age and financial circumstances, and that she is therefore capable of paying her unsecured debts, is not clearly erroneous; nor did it abuse its discretion in dismissing her Chapter 7 petition. We therefore affirm.

## A

**[1]** At the time Hebbring filed her petition, 11 U.S.C. § 707(b) provided that a court "may dismiss a case filed by an

individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter." In determining whether a petition constitutes a substantial abuse of Chapter 7, we examine the totality of the circumstances, focusing principally on whether the debtor will have sufficient future disposable income to fund a Chapter 13 plan that would pay a substantial portion of his unsecured debt. *Price*, 353 F.3d at 1139-40; *see also In re Kelly*, 841 F.2d 908, 914 (9th Cir. 1988) ("[A] debtor's ability to pay his debts will, standing alone, justify a section 707(b) dismissal."). To calculate a debtor's disposable income, we begin with current monthly income and subtract amounts "reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2).

**[2]** Neither the Bankruptcy Code nor the Code's legislative history defines "reasonably necessary." Some courts, including the Third and Sixth Circuits, have employed a per se rule that voluntary contributions to retirement plans are never a reasonably necessary expense. *See, e.g.*, *In re Anes*, 195 F.3d 177, 180-81 (3d Cir. 1999); *In re Harshbarger*, 66 F.3d 775, 777 (6th Cir. 1995); *In re Mendoza*, 274 B.R. 522, 524-25 (Bankr. D. Ariz. 2002); *In re Cavanaugh*, 175 B.R. 369, 373 (Bankr. D. Idaho 1994). These courts typically emphasize that allowing debtors to exclude retirement contributions from disposable income at the expense of unsecured creditors is unfair. *See, e.g.*, *In re Merrill*, 255 B.R. 320, 324 (Bankr. D. Or. 2000). In contrast, other courts, including the Second Circuit, have adopted a case-by-case approach, under which contributions to a retirement plan may be found reasonably necessary depending on the debtor's circumstances. *See, e.g.*, *In re Taylor*, 243 F.3d 124, 129-30 (2d Cir. 2001); *In re Bell*, 264 B.R. 512, 516-17 (Bankr. S.D. Ill. 2001); *In re Mills*, 246 B.R. 395, 401-02 (Bankr. S.D. Cal. 2000), *as amended*.

**[3]** We believe this latter approach better comports with Congress's intent, as expressed in the language, purpose, and

structure of the Bankruptcy Code. By not defining the phrase "reasonably necessary" or providing any examples of expenses that categorically are or are not reasonably necessary, *see* 11 U.S.C. § 1325(b)(2), the Code suggests courts should examine each debtor's specific circumstances to determine whether a claimed expense is reasonably necessary for that debtor's maintenance or support. *See In re Davis*, 241 B.R. 704, 709 (Bankr. D. Mont. 1999). We find no evidence that Congress intended courts to employ a per se rule against retirement contributions, which may be crucial for debtors' support upon retirement, particularly for older debtors who have little or no savings. *See, e.g.*, *In re King*, 308 B.R. 522, 532 (Bankr. D. Kan. 2004); *Mills*, 246 B.R. at 402. Where Congress intended courts to use a per se rule rather than a case-by-case approach in classifying financial interests or obligations under the Bankruptcy Code, it has explicitly communicated its intent. *See, e.g.*, 11 U.S.C. § 522(d) (exempting from property of the estate several specific types of property, including interests in personal jewelry, a debtor's tools of trade, and the right to receive payments from a pension plan). Congress's decision not to categorically exclude any specific expense, including retirement contributions, from being considered reasonably necessary is probative of its intent. *See, e.g.*, *ARC Ecology v. U.S. Dept. of Air Force*, 411 F.3d 1092, 1099-100 (9th Cir. 2005) ("[O]missions are the equivalent of exclusions when a statute affirmatively designates certain persons, things, or manners of operation."); *BV Eng'g v. Univ. of Calif., Los Angeles*, 858 F.2d 1394, 1398 (9th Cir. 1988) ("It is well settled that in interpreting a statute we must consider each provision in the context of the statute as a whole.").

Requiring a fact-specific analysis to determine whether an expense is reasonably necessary is sound policy because it comports with the Code's approach to identifying substantial abuse of the Chapter 7 relief provisions. We have consistently held that § 707(b) does not include a "bright line test" for substantial abuse, but rather "commit[s] the question of what constitutes substantial abuse to the discretion of bankruptcy

judges within the context of the Code." *Price*, 353 F.3d at 1140; *see also Kelly*, 841 F.2d at 916. "Congress chose neither to define 'substantial abuse' in the 1984 Act nor to leave specific guidance in legislative history. Congress thus left a flexible standard enabling courts to address each petition on its own merit." *In re Lamanna*, 153 F.3d 1, 3 (1st Cir. 1998) (footnote omitted). That Congress granted courts the discretion to identify substantial abuse necessarily suggests it intended courts to have the discretion to answer the subsidiary question of whether particular expenses are reasonably necessary.

**[4]** In light of these considerations, and in the absence of any indication that Congress sought to prohibit debtors from voluntarily contributing to retirement plans per se, we conclude that bankruptcy courts have discretion to determine whether retirement contributions are a reasonably necessary expense for a particular debtor based on the facts of each individual case. *See Taylor*, 243 F.3d at 129. In making this fact-intensive determination, courts should consider a number of factors, including but not limited to: the debtor's age, income, overall budget, expected date of retirement, existing retirement savings, and amount of contributions; the likelihood that stopping contributions will jeopardize the debtor's fresh start by forcing the debtor to make up lost contributions after emerging from bankruptcy; and the needs of the debtor's dependents. *See id.* at 129-30. Courts must allow debtors to seek bankruptcy protection while voluntarily saving for retirement if such savings appear reasonably necessary for the maintenance or support of the debtor or the debtor's dependents. *See* 11 U.S.C. § 1325(b)(2).

We are not dissuaded by cases endorsing a per se rule. *See, e.g.*, *Anes*, 195 F.3d at 180-81; *Harshbarger*, 66 F.3d at 777. The Bankruptcy Code and congressional intent control how courts should identify reasonably necessary expenses. A per se rule is inappropriate in the face of Congress's delegation of

discretion to bankruptcy courts to evaluate expenses on a case-by-case basis.

Nor do we believe that "the case by case approach . . . is potentially difficult to apply and may lead to disparate results even before the same judge." *Mendoza*, 274 B.R. at 524. The case-by-case approach we adopt should be no more difficult to apply to retirement contributions than to other forward-looking expenses that bankruptcy courts must evaluate for reasonableness, such as life insurance premiums, *see, e.g.*, *In re Smith*, 207 B.R. 888, 890 (B.A.P. 9th Cir. 1996); private school tuition for debtors' children, *see, e.g.*, *In re Watson*, 403 F.3d 1, 7-8 (1st Cir. 2005); *In re Nicola*, 244 B.R. 795, 796-97 (Bankr. N.D. Ill. 2000); or home maintenance costs, *see, e.g.*, *In re Voelkel*, 322 B.R. 138, 142 (B.A.P. 9th Cir. 2005).

**B**

[5] Here, the bankruptcy court suggested that it employed a per se rule against retirement contributions, but also found, in the alternative, that Hebbring's retirement contributions are not a reasonably necessary expense based on her age and specific financial circumstances. This finding is not clearly erroneous. When she filed her bankruptcy petition, Hebbring was only thirty-three years old and was contributing approximately 8% of her gross income toward her retirement. Although Hebbring had accumulated only $6,289 in retirement savings, she was earning $49,000 per year and making mortgage payments on a house. In light of these circumstances, the bankruptcy court's conclusion that Hebbring's retirement contributions are not a reasonably necessary expense is not clearly erroneous. *Compare, e.g.*, *In re Osborne*, No. 02-24999, 2003 WL 1960375, at *1, *4 (Bankr. D. Colo. 2003) (holding that 401(k) contributions of less than 2% of debtors' $71,280 annual gross income were not a reasonably necessary expense for a married couple in their early thirties), *with Mills*, 246 B.R. at 399, 402 (holding that 401(k)

contributions of 10% of debtor's $36,228 annual gross income were a reasonably necessary expense for a fifty-six-year-old debtor with total retirement savings of $9,000).

## IV

Hebbring also challenges the bankruptcy court's ruling on three bases that require little discussion. She contends that the bankruptcy court should have held an evidentiary hearing; that it erred in finding, based on schedules she submitted, that she had the ability to fund a Chapter 13 plan; and that it erred in concluding that the Trustee met his burden of demonstrating substantial abuse by a preponderance of the evidence.

## A

**[6]** The bankruptcy court was not required to hold an evidentiary hearing because there were no disputed issues of material fact. *See* Bankr. R. 9014(d). Although in her opposition to the Trustee's motion to dismiss Hebbring argued that her expenses were higher than she had stated in her expense schedule, she never filed an amended schedule. *Cf. In re Michael*, 163 F.3d 526, 529 (9th Cir. 1998) ("No court approval is required for an amendment, which is liberally allowed."). Nor does *In re Harris* aid Hebbring. 279 B.R. 254 (B.A.P. 9th Cir. 2002). In *Harris*, unlike here, the bankruptcy court concluded that the debtors' expenses were unreasonable and dismissed their Chapter 7 petition for substantial abuse without making any factual findings or taking any evidence regarding the reasonableness of the disputed expenses. *Id.* at 258, 260.

## B

**[7]** The bankruptcy court did not err in concluding that Hebbring has the ability to fund a Chapter 13 plan. The court calculated Hebbring's income and expenses from the very schedules Hebbring submitted to support her petition for relief

from her debts. These uncontested schedules demonstrate that, including her voluntary retirement plan contributions, Hebbring has $172 per month in disposable income, sufficient to repay 56% of her unsecured debt over three years or 93% over five years (not including interest on the debt). Even subtracting attorneys' and trustee fees for a Chapter 13 plan from Hebbring's disposable income, she can still pay 27% over three years or 65% over five years (not including interest on the debt). The bankruptcy court thus did not err in finding that Hebbring is able to fund "a substantial portion of the unsecured claims" in a Chapter 13 plan. *In re Price*, 353 F.3d at 1139; *see also In re Behlke*, 358 F.3d 429, 437 (6th Cir. 2004) (debtors seeking Chapter 7 relief who could pay 14% of unsecured debt over three years had the ability to fund a Chapter 13 plan).

## C

[8] We find no merit in Hebbring's muddled argument that the Trustee failed to meet its burden of proving substantial abuse. The Trustee relied on Hebbring's own schedules in arguing that Hebbring has the ability to fund a Chapter 13 plan. To the extent Hebbring contends that the bankruptcy court made inadequate factual findings, she ignores the record. Based on Hebbring's schedules, the district court found that her retirement contributions are not a reasonably necessary expense and that she has sufficient disposable income to fund a Chapter 13 plan. As noted above, these findings are not clearly erroneous, and the bankruptcy court therefore did not abuse its discretion in dismissing her petition for substantial abuse. *See Price*, 353 F.3d at 1140. *In re Hotel Hollywood*, on which Hebbring relies, is inapposite because there "the bankruptcy court did not make findings of fact" and the appellate court was therefore "unable to ascertain the legal grounds on which the [bankruptcy] court reached its decision." 95 B.R. 130, 132, 134 (B.A.P. 9th Cir. 1988).

**V**

For the foregoing reasons, the district court's order affirming the bankruptcy court's order dismissing this case is

**AFFIRMED**.