**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: CHERYL LEE
CRAIG,

*Debtor,*

No. 08-15451

CHERYL LEE CRAIG,
*Plaintiff-Appellant,*

D.C. No.
06-cv-00466-CKJ

v.

OPINION

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,
*Defendant-Appellee.*

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
June 12, 2009   San Francisco, California

Filed August 26, 2009

Before: Stephen S. Trott, M. Margaret McKeown and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Trott

11817

## COUNSEL

Kasey C. Nye, Quarles & Brady, LLP, Tucson, Arizona, for the appellant.

Madeleine C. Wanslee, Gust Rosenfeld P.L.C., Phoenix, Arizona, and A.L. Brown, Oakdale, Minnesota, for the appellee.

## OPINION

TROTT, Judge:

This case requires us to address the dischargeability of a student loan in bankruptcy under 11 U.S.C. § 523(a)(8) based on "undue hardship."

## FACTS AND PROCEDURAL HISTORY

Cheryl Lee Craig took out student loans beginning in 1990 to attend Pima Community College and the University of Arizona. She obtained an AA in paralegal studies in 1992, and a BA in sociology in 1996. In 2003, she consolidated her student loans through a consolidation loan with Educational Credit Management Corporation ("ECMC"). It is this consolidated loan that is at issue in these proceedings.

Craig obtained various deferments and forbearances on her student loans, both before and after consolidation. As a result,

she has never made a payment on the loans. In October 2004, she petitioned for Chapter 7 bankruptcy relief and initiated this adversary proceeding against ECMC, seeking to have her student loan debt discharged under 11 U.S.C. § 523(a)(8) based on undue hardship. As of April 10, 2005, she owed $81,575 on the consolidated student loan.

A one day trial was held on April 25, 2005. At the time of trial, Craig was forty-seven years old. She worked full-time as a customer service representative for Anderson Financial Network, Inc. ("AFN").[1] She earned $10 per hour, and typically worked approximately fifty to sixty-five hours each two week pay period. AFN also provided Craig with certain benefits, including health insurance.

Craig's employment at AFN was protected under the Family Medical Leave Act, which permits Craig to miss up to 400 hours of work per year as a result of doctor certified medical issues and still keep her full-time employment status. This is significant because Craig suffers from numerous serious medical problems, including asthma, diabetes, chronic bronchitis, heart problems (she had a heart attack in 2002), acid reflux, irritable bowel syndrome, and chronic back problems. These medical problems require the monthly intervention of, and monitoring by, several physicians, and a daily regime of prescription drugs. Even with the benefit of health insurance, Craig's out-of-pocket medical costs were approximately $350 per month in 2004.

Craig's income in 2004 was $16,815. The bankruptcy court found it unlikely that Craig would be able to materially change her employment status in the future, and thus used the $16,815 income figure in determining whether Craig demonstrated that she would suffer "undue hardship" if required to repay her student loan.

---

[1]She also occasionally worked as a substitute teacher, earning $80 per day, and as a paralegal.

Craig claimed monthly expenses totaling $1,873, which included (1) a $150 monthly mortgage payment on Craig's mobile home and (2) a $68 monthly contribution to her employer's 401(k) plan. These monthly expenses also included $427 for an automobile payment and miscellaneous automobile expenses. The bankruptcy court noted that, at the time of trial, Craig did not own a vehicle but that this was a temporary condition and that Craig intended to acquire a vehicle and would thus incur automobile expenses.

After considering the evidence, the bankruptcy court found a more realistic total monthly expense budget for Craig to be $1,785. The court reached this budget by adjusting Craig's claimed monthly expenses as follows: a $75 reduction for food; a $75 increase added by the court as a contingency fund for things such as home repairs, occasional clothing, gifts, and unforeseeable emergencies; and a $90 reduction in the payment on an automobile.[2] The bankruptcy court recognized, however, that when Craig obtained a vehicle, her total budget would exceed her total monthly income by $384.

The bankruptcy court then found that, other than the $68 monthly 401(k) plan contribution, the items included in Craig's $1,785 adjusted monthly budget were reasonably necessary to maintain a minimal standard of living and that Craig should be required to pay on her student loan debt the $68 per month that she had been contributing to the 401(k) plan. The bankruptcy court further found that because Craig's mobile home mortgage payment of $150 would end in December 2006, beginning in January 2007, Craig should be required to pay on her student loan debt the $150 per month that she had

---

[2]Subtracting $90 from Craig's proposed $1,873 budget would result in an adjusted budget of $1,783 rather than $1,785. Further, a line-by-line addition of the adjusted budget results in a total adjusted budget of $1,788 rather than $1,785. Because, however, this slight mathematical error does not affect our decision, we will use the adjusted budget amount of $1,785 used by the bankruptcy and district courts.

been paying on her mortgage. The bankruptcy court thus declared Craig's student loan debt discharged, except that her debt was not discharged as to: $68 per month from May 1, 2005, forward, plus an additional $150 per month from January 1, 2007, forward.

Craig requested clarification of the bankruptcy court's ruling, pointing out that the bankruptcy court had not indicated what portion of the total student loan debt was discharged; the number of payments Craig would be required to make; and whether interest was to continue to accrue and, if so, the portion of the student loan on which interest would accrue. In response, the bankruptcy court clarified that interest was to continue to accrue on the entire student loan debt.

The district court, although unable clearly to rationalize the bankruptcy court's analysis, affirmed the bankruptcy court on the obligation of Craig to pay $68 per month from May 1, 2005, forward, and on the accrual of interest on the entire student loan debt, but reversed the bankruptcy court on Craig's obligation to pay $150 per month from January 1, 2007, forward. Craig timely appeals. We vacate and remand for reconsideration.

## STANDARD OF REVIEW

We review de novo the district court's decision on appeal from a bankruptcy court. *Educ. Credit Mgmt. Corp v. Coleman (In re Coleman)*, 560 F.3d 1000, 1003 (9th Cir. 2009). We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Id.* We review its choice of remedies for an abuse of discretion. *Bankr. Receivables Mgmt. v. Lopez (In re Lopez)*, 345 F.3d 701, 705 (9th Cir. 2003).

## ANALYSIS

I.  Does the bankruptcy court's remedy violate 11 U.S.C. § 523(a)(8)?

**[1]** Under 11 U.S.C. § 523(a)(8), a student loan debt is non-dischargeable in bankruptcy "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents . . . ." 11 U.S.C. § 523(a)(8). Under this provision, a bankruptcy court may discharge a student loan debt in full or in part. *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1173-74 (9th Cir. 2003). To obtain a discharge, a debtor must demonstrate that she meets the "undue hardship" requirement of § 523(a)(8) as to that portion of the debt to be discharged. *Id.* at 1174.

**[2]** We apply a three-part test, known as the *Brunner* test, to determine whether excepting all or part of a student loan debt from discharge will impose an "undue hardship" under § 523(a)(8). *See United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1112 (9th Cir. 1998) (citing *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)). Under the *Brunner* test, a debtor must demonstrate:

> (1) that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Saxman*, 325 F.3d at 1173 (citing *Pena*, 155 F.3d at 1111; *Brunner*, 831 F.2d at 396).

The bankruptcy court found that Craig met all three prongs of the *Brunner* test: (1) that (with the exception of the $68 monthly 401(k) contribution), Craig was maintaining her existence at a minimal standard of living and had no discretionary income with which to repay her student loan in whole or in part; (2) that based upon her age, health, current low-paying employment, and lack of possibilities for improving her employment status, Craig's current financial condition was likely to persist for a significant portion of any repayment period imposed by the court; and (3) that Craig made a good faith effort to repay the loan by keeping the lender informed as to her whereabouts and employment status, and seeking and obtaining deferments and forbearances such that she was not in default when she filed her bankruptcy petition. The second and third prongs of the *Brunner* test are not at issue in this appeal.

A.  Did the bankruptcy court err by failing to fully discharge Craig's student loan debt?

Craig argues that because she did not have the present ability on the facts found by the bankruptcy court to make a payment in any amount on her student loan debt without experiencing undue hardship, (1) that it was error for the bankruptcy court to order her to pay $68 a month (plus an additional $150 a month beginning in January 2007) against her student loan, and (2) that she was entitled to a full discharge of her student loan debt under § 523(a)(8).

The bankruptcy court found that, with the exception of the $68 monthly 401(k) contribution, a budget for Craig of $1,785 per month was realistic for Craig to maintain a minimal standard of living. Assuming the $68 monthly 401(k) contribution is not "reasonably necessary" for Craig to maintain a minimal standard of living, this simply means that Craig's monthly budget should have been reduced by $68 to determine whether she had discretionary income left over to pay her student loan. The bankruptcy court did not, however,

directly address whether Craig had discretionary income left over if her budget was reduced by the $68 per month. Instead, the bankruptcy court simply concluded that because the $68 monthly 401(k) contribution was not necessary for maintaining a minimal standard of living and Craig had been making such payments, she could afford to pay $68 on her student loan.

[3] A review of Craig's expenses to maintain a minimal standard of living and her income demonstrates that the bankruptcy court probably erred because—accepting the bankruptcy court's findings of fact at face value—Craig cannot afford to pay *any* amount, let alone $68 a month, on her student loan without incurring undue hardship.

[4] Reducing Craig's monthly budget of $1,785 by the disputed $68 monthly 401(k) contribution results in an adjusted monthly budget of $1,717. The bankruptcy court found Craig's monthly income to be $1,401. This left Craig with a monthly deficit of $316 as of the time of trial based on the bankruptcy court's own findings of Craig's income and her expenses "necessary" to maintain a minimal standard of living.[3] Because Craig's monthly expenses necessary to maintain herself at a minimal standard of living exceeded her monthly income, she may have had no discretionary income with which to pay her student loan in whole or in part. *See Pena*, 155 F.3d at 1113 (holding that where debtors' average monthly expenses subtracted from their average monthly income resulted in a monthly deficit of $41, debtors could not maintain a minimal standard of living and pay off their student loans). It thus appears that Craig met her burden on the first prong of the *Brunner* test by establishing that she is not able to maintain a minimal standard of living if she is forced

---

[3]This $316 monthly deficit should have been reduced to $166 per month as of January 2007 because Craig was scheduled to pay off the mortgage on her mobile home in December 2006 and thus would no longer have a $150 monthly mortgage payment.

to repay any portion of her student loan. *See id*.; *Brunner*, 831 F.2d at 396.

We note that the district court was perplexed by the bankruptcy court's conclusion that Craig could pay $68 per month even though her necessary expenses were $384 greater than her income. The district court said, "Craig's argument is not without merit, . . ." The court added that "the bankruptcy court must have erred in finding that the $68 and $150 payments did not impose an undue hardship *if* indeed it also found that the $384 income deficiency necessarily meant that any payment at all would impose an undue hardship." The district court, however, then speculated that the bankruptcy court must have found that Craig "presumably makes ends meet with a $384 monthly income deficit."

**[5]** However, we have no way of knowing how the bankruptcy court arrived at its conclusion regarding Craig's ability to pay $68 a month towards her student loan debt, and thus, we have no way of reviewing this issue. Craig appears to have met her burden of establishing that excepting any portion of her student loan debt from discharge would impose an "undue hardship" within the meaning of § 523(a)(8), and that she might be entitled to a discharge of her entire student loan debt. *Cf. Saxman*, 325 F.3d at 1174 (holding that a debtor is entitled to a discharge of that portion of the student loan that meets the requirements of § 523(a)(8)). In light of the lack of clarity in the bankruptcy court's analysis on this issue, we vacate and remand to the district court with instructions to remand to the bankruptcy court for reanalysis and clarification.[4]

---

[4]Our remand for reconsideration of Craig's ability to pay renders unripe Craig's argument that the bankruptcy court's remedy—which simply reduced her monthly payments but extended into perpetuity her obligation to make those payments—is not a partial discharge and exceeded the bankruptcy court's authority.

B. Did the bankruptcy court err in determining Craig's contribution to a 401(k) plan was not an expense necessary to maintain a minimal standard of living and that Craig could thus make monthly payments on her student loan in the amount she had been contributing to her 401(k)?

The bankruptcy court determined that Craig's $68 monthly contribution to her employer's 401(k) plan, "[w]hile understandable, . . . does not pass muster as a 'necessary' expense." In making this determination, the bankruptcy court relied on cases that applied a *per se* rule that voluntary contributions to retirement plans are not a reasonably necessary expense.

[6] Soon after the bankruptcy court issued its decision we rejected the application of a *per se* rule that voluntary contributions to retirement plans are never a reasonably necessary expense. *See Hebbring v. U.S. Trustee*, 463 F.3d 902 (9th Cir. 2006).[5] Under *Hebbring*, the determination of whether retire-

---

[5]*Hebbring* is a pre-Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") case, *see* 463 F.3d at 904 n.1, that addresses essentially the same standard at issue here—whether an expense is reasonably necessary—albeit in a different context. Because Craig's case was decided on April 27, 2005, before BAPCPA went into effect on October 17, 2005, we therefore hold the test in *Hebbring* for determining whether a voluntary 401(k) contribution is a reasonably necessary expense to be viable and applicable to the pre-BAPCPA determination of whether Craig's 401(k) contribution is an expense reasonably necessary to maintain a minimal standard of living.

In *Egebjerg v. Anderson (In re Egebjerg)*, No. 08-55301, 2009 WL 2357706 (9th Cir. 2009), a post-BAPCA case, this circuit held, in the context of determining whether a debtor's Chapter 7 filing was presumptively abusive under BAPCPA's "means test," 11 U.S.C. § 707(b)(2), that a debtor's voluntary contribution to a retirement plan is *per se* not an "[o]ther [n]ecessary [e]xpense." *See Egebjerg*, 2009 WL 2357706, at *5-*6. In so holding, the *Egebjerg* decision noted that the test at issue in *Hebbring*—the totality of the circumstances test, which now appears, as modified by BAPCPA, at 11 U.S.C. § 707(b)(3)—is distinct from the § 707(b)(2) "means test," and that the holding in *Hebbring* was thus inapplicable to the case before it. *Id.* at *6.

ment contributions are a "reasonably necessary" expense is to be made using a "a case-by-case approach." *Id.* at 906. Under this approach, "bankruptcy courts have discretion to determine whether retirement contributions are a reasonably necessary expense for a particular debtor based on the facts of each individual case." *Id.* at 907.

> In making this fact-intensive determination, courts should consider a number of factors, including but not limited to: the debtor's age, income, overall budget, expected date of retirement, existing retirement savings, and amount of contributions; the likelihood that stopping contributions will jeopardize the debtor's fresh start by forcing the debtor to make up lost contributions after emerging from bankruptcy; and the needs of the debtor's dependents. Courts must allow debtors to seek bankruptcy protection while voluntarily saving for retirement if such savings appear reasonably necessary for the maintenance or support of the debtor or the debtor's dependents.

*Id.* (citations omitted).

[7] Here, because it did not have the benefit of our holding in *Hebbring*, the bankruptcy court did not address Craig's particular circumstances in determining that the 401(k) contributions were not necessary, but instead simply applied a *per se* rule. Accordingly, on remand, the bankruptcy court will need to make the fact-intensive determination under *Hebbring* of whether Craig's retirement contributions are a reasonably necessary expense based on her individual circumstances. *See Hebbring*, 463 F.3d at 907.

---

Because we are examining a pre-BAPCPA question, namely, whether Craig's 401(k) contribution is reasonably necessary to maintain a minimal standard of living to, in turn, determine whether requiring Craig to repay her student loan would impose an undue hardship under 11 U.S.C. § 528(a)(8), the *Egebjerg* decision is not applicable to our analysis here.

II. Does the remedy set forth by the bankruptcy court violate the Thirteenth Amendment of the U.S. Constitution?

Craig's final argument is that the bankruptcy court's remedy imposes an unconstitutional peonage in violation of the Thirteenth Amendment to the U.S. Constitution because (1) her expenses exceed her income, and (2) as a result of the bankruptcy court's order, she will be making payments on her student loan into perpetuity while the balance on the student loan continues to increase, making it impossible for Craig to ever pay off that loan. We reject this argument as patently specious.

## CONCLUSION

We vacate and remand to the district court with instructions to remand to the bankruptcy court for a determination of (1) whether, under Craig's particular circumstances, the $68 monthly 401(k) contribution is "necessary," and (2) what portion of Craig's outstanding student loan debt is subject to discharge based on Craig's monthly income and her monthly expenses necessary for maintaining a minimal standard of living.

**VACATED and REMANDED**.