FILED

NOT FOR PUBLICATION

JAN 30 2012

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

ROBERT CHARLES DESTFINO and
ILA JANE DESTFINO,

Appellants,

v.

GERALD BOCKTING,

Appellee.

No. 10-17483

D.C. No. 2:10-cv-00768-JAM

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted January 18, 2012
San Francisco, California

Before: McKEOWN, CLIFTON, and BYBEE, Circuit Judges.

Appellant Ila Destfino entered into an agreement with Appellee Gerald

Bockting to invest in a scheme called "Corporate Sole," with the idea that it would

eliminate their debt and tax liability. Bockting contributed the funds, and Ila

Destfino managed them. Bockting seeks to recover from Ila Destfino and her

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

husband Robert the funds Bockting contributed to the scheme. The bankruptcy court found the Destfinos liable for defalcation and embezzlement, giving rise to a non-dischargeable debt under 11 U.S.C. § 523(a)(4), and assessed damages at $388,000. The district court affirmed.[1]

The Destfinos argue: (1) Bockting cannot enforce the agreement against Ila Destfino because the agreement had an illegal purpose; (2) Ila Destfino did not owe Bockting a fiduciary duty; (3) Robert Destfino is not jointly and severally liable for the judgment of defalcation; and (4) the bankruptcy court incorrectly calculated damages to be the net amount of funds Bockting contributed to the scheme, rather than the funds Ila Destfino could not account for. We affirm on liability but vacate and remand to the district court with instructions to remand to the bankruptcy court for a recalculation of the damage award. *See Craig v. Educ. Credit Mgmt. Corp.* (*In re Craig*), 579 F.3d 1040, 1047 (9th Cir. 2009).

1.     The Destfinos argue that Bockting cannot collect the judgment because the agreement between Ila Destfino and Bockting had an illegal purpose—defrauding the government and various creditors. *See* Cal. Civ. Code §

_____

[1] The district court's decision on a bankruptcy appeal is reviewed de novo. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986). The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard, and its conclusions of law are reviewed de novo. *Id.*

2

1598. While Corporate Sole may have been an illegal scheme because it allegedly defrauded its own investors by taking their money and promising them impossible results, this does not mean that *investing in* Corporate Sole was illegal. It simply turned out to be an unwise business decision.

2.   The Destfinos contend that Robert Destfino cannot be held liable for defalcation. This argument is moot because the bankruptcy court found both Destfinos liable for embezzlement as well. The Destfinos' brief advances no arguments concerning embezzlement, so they have forfeited this argument on appeal. Robert Destfino remains jointly and severally liable with Ila Destfino for the entire amount of the judgment whether or not he is liable for defalcation.

3.   A debt falls under 11 U.S.C. § 523(a)(4) "where 1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created." *Otto v. Niles* (*In re Niles*), 106 F.3d 1456, 1459 (9th Cir. 1997) (internal quotation marks omitted). "Defalcation is defined as the misappropriation of trust funds or money held in any fiduciary capacity [or] the failure to properly account for such funds." *Lewis v. Scott* (*In re Lewis*), 97 F.3d 1182, 1186 (9th Cir. 1996) (internal quotation marks omitted). The existence of a trust is a question of fact to be reviewed for clear error. *Long v. Neeland*, 4 P.2d 815, 816 (Cal. Ct. App. 1931).

3

The bankruptcy court's finding that a trust existed was not clearly erroneous due to the repeated use of the word "trustee" in the agreement. The Destfinos argue, however, that no trust was created because Bockting testified at trial that he intended to form a partnership with Ila Destfino, rather than a trust. This argument fails because we have held that the fiduciary duties between partners under California law can give rise to a non-dischargeable debt under § 523(a)(4). *See Ragsdale*, 780 F.2d at 796–97. Ila Destfino acted in a fiduciary capacity when managing Bockting's funds, whether it was a trust or a partnership that was created by the agreement between them.

4.      The bankruptcy court found, and both parties agree, that the total amount of funds contributed by Bockting to the scheme, minus periodic disbursements from Ila Destfino, was $388,327.60. The Destfinos introduced various exhibits prior to and during trial which accounted for $312,679.99, $356,054.41, $356,254.41, and $366,423.76, respectively. Understandably, the bankruptcy judge was frustrated with the bookkeeping errors and inconsistent figures offered by Ila Destfino, and rejected the accounting altogether. However, this was error. The various accountings were not off by several orders of magnitude; they varied by about fifty thousand dollars. It is not disputed that Ila Destfino was making mortgage payments on two houses Bockting owned and lived

4

in, and that Bockting was driving around in at least one of the luxury cars. Ila Destfino proved at trial that she applied upward of three hundred thousand dollars toward the Corporate Sole scheme. It was improper to reject her final accounting, which was supported by bank statements and canceled checks—especially when the bankruptcy court's rationale for doing so is unclear from the record.

Bockting defends the bankruptcy court's judgment by claiming that a legally sufficient accounting requires more than a list of how the Destfinos used the money they "stole" from Bockting. This argument is non-responsive to the actual contents of the accounting, and is simply incorrect. Contrary to Bockting's argument, the accountings introduced at trial do not make any reference to expenses for "jewelry" or a "grand piano." The accountings consist of payments for automobiles, mortgages, and Corporate Sole. By Bockting's own admission, these expenses were incurred in accordance with the agreement between Bockting and Ila Destfino. *See* Trial Tr. at 34:7–18 (Aug. 24, 2009). The bankruptcy court specifically declined to find that Bockting was a victim of fraud, and noted that both parties "got into [the scheme] because of their own greed, and that includes Mr. Bockting." Trial Tr. at 90:15–16, 93:4–5 (Oct. 2, 2009). The purchase of luxury vehicles cannot constitute misappropriation, because Bockting *authorized* the use of his funds to purchase vehicles for the debt-elimination scheme. *Cf.*

*Blyler v. Hemmeter* (*In re Hemmeter*), 242 F.3d 1186, 1191 (9th Cir. 2001) (finding no defalcation where the alleged damages were the result of "a decline in value of the . . . stock," and the plan administrator was "specifically authorized to invest" in that stock). The Destfinos' liability is only for the funds misappropriated or unaccounted for—not for the entire amount of funds that Bockting contributed to the scheme.

We therefore vacate the damages award and remand this case to the district court with instructions to remand to the bankruptcy court for a recalculation of damages that reflects the amount of money Ila Destfino can prove through admissible evidence that she applied to the financing of the automobiles and the mortgages, and the payments to Corporate Sole. Although we do not have the benefit of the documentation underlying the accountings, if such documentation is available, we suspect the amount of damages will fall somewhere in between twenty and eighty thousand dollars. We remind the parties that the services of the Ninth Circuit mediator's office are available.

Each party shall bear its own costs on appeal.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.