**In re Alvin Leon DOWLEYNE and Teresita Arcilla Dowleyne, Debtors.**

**No. 6:08–bk–00672–ABB.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Sept. 23, 2008.

Hurley Partin Whitaker, Hurley Partin Whitaker PA, Melbourne, FL, for Debtors.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Motion to Dismiss (Doc. No. 19) filed by Donald F. Walton, the Acting United States Trustee for Region 21 ("UST"), seeking dismissal of this case filed by the Debtors Alvin Leon Dowleyne and Teresi-ta Arcilla Dowleyne (collectively, "Debtors") pursuant to 11 U.S.C. Sections 707(b)(1) and 707(b)(3)(B). The UST is not pursuing the Section 707(b)(2) and Section 707(b)(3)(A) dismissal counts contained in its Motion. A final evidentiary hearing was held on June 25, 2008 at which, the Debtors, their counsel, and counsel for the UST appeared.

The parties, pursuant to the Court's directive, filed post-hearing briefs. The Court reopened the evidentiary record by Order entered on August 6, 2008 (Doc. No. 40) directing the Debtors to submit an affidavit detailing the incurred and anticipated costs relating to their adoption of Mrs. Dowleyne's niece, who resides in the Philippines. The UST was directed to file a response or request a further evidentiary hearing. The Debtors filed an Affidavit (Doc. No. 42) and the UST filed a response thereto (Doc. No. 43). The UST did not request a further evidentiary hearing.

The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

The Debtors filed a joint Chapter 7 petition on January 31, 2008 ("Petition Date") accompanied by Schedules, a Statement of Financial Affairs, and a Chapter 7 Statement of Current Monthly Income and Means–Test Cbriskalculation (Doc. No. 1). This case is governed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[1] BAPCPA, among other things, broadened the standard for dismissal of Chapter 7 cases from

---

1. Pub.L. No. 109–8, 119 Stat. 23 (2005).

"substantial abuse" to "abuse" and created a rebuttable presumption of abuse.

The Debtors' debts are primarily consumer debts consisting of two home mortgages, a time-share mortgage, credit card debts, and student loans. Their Schedule F general unsecured debts total $95,047.00 and their Schedule D secured debts total $392,059.00, of which $382,411.00 is the home mortgage debt. They list no unsecured priority debts in Schedule E. They do not seek rejection of any executory contracts, including any personal services contracts.

The Chapter 7 Trustee declared this case an asset case pursuant to the sale of the Debtors' vehicle to the Debtors for the sales price of $1,620.00 (Doc. Nos. 18, 26).

The UST timely filed its Motion to Dismiss and seeks dismissal of this case as an abusive filing on the basis the totality of the Debtors' financial situation demonstrates abuse. The Debtors' Second Amended Means Test sets forth the presumption of abuse does not arise pursuant to Section 707(b)(2) of the Bankruptcy Code. The UST is not pursuing dismissal on its Section 707(b)(2) presumption of abuse count or its Section 707(b)(3)(A) bad faith count.

The Debtors filed no response to the Motion to Dismiss. They filed an Amended Schedule I and Amended Means Test on June 11, 2008 (Doc. Nos. 27, 30). They filed an Amended Schedule J and a Second Amended Means Test (Doc. Nos. 32, 34) on June 24, 2008—the day prior to the evidentiary hearing.

The figures in the Debtors' Amended Schedules I and J do not parallel those in their Second Amended Means Test. The Debtors are both employed and earn a combined net average monthly income of $7,031.37 pursuant to Amended Schedule I (Doc. No. 27). Their average monthly expenses are $6,573.00, resulting in positive net monthly income of $458.37 (Doc. No. 32) pursuant to Schedule J.

The Debtors' Second Amended Means Test sets forth total current monthly income of $8,679.69 and allowed expenses of $4,177.72 plus additional expense deductions of $836.81 (Doc. No. 34). They assert negative monthly disposable income of $127.18.

Amended Schedule J and the Second Amended Means Test contain a monthly expenditure of $250.00 for "payment to codebtor's mother and sister in Philippines." The Debtors are attempting to adopt Mrs. Dowleyne's teenage niece, who resides in the Philippines, pursuant to an adoption Final Judgment entered prepetition on May 7, 2007. The UST is not pursuing an objection to the allowance of such support payments.

Amended Schedule J and the Second Amended Means Test contain a monthly mortgage expense of $3,546.00 and utilities of $660.00. America's Servicing Company, which holds a first priority mortgage on the Debtors' home was granted relief from the automatic stay (Doc. No. 15). The Debtors set forth in their Statement of Intention they intend to surrender the home (Doc. No. 1).

### *Totality of the Circumstances*

The UST seeks dismissal of this case based on the totality of the circumstances of the Debtors' financial situation. The core inquiry of the totality of the circumstances test is whether the Debtors have a meaningful ability to repay their unsecured debts. Post-petition events are relevant to a totality of the circumstances analysis.

The Debtors' Amended Schedules and Amended Means Tests are not accurate. The Debtors have substantial monthly disposable income after adjustment of overstated expenses and removal of disallowed and unnecessary expenses.

The Debtors surrendered the home and moved into an apartment, reducing their monthly housing costs significantly. Secured debt contractual payments on surrendered property are not permissible deductions for a Section 707(b)(3)(B) analysis. The Debtors' monthly housing expenditures listed in Amended Schedule J and the Second Amended Means Test are overstated. Their current total housing and storage expense is $1,487.00 (UST's Exh. No. 7).

Only expenses reasonably necessary for the maintenance or support of the debtor or a debtor's dependent are allowable for a Section 707(b)(3)(B) analysis. The Debtors claim expense deductions for flood insurance of $34.00 and condominium fees of $48.00 in Line 21 of their Second Amended Means Test. The Debtors, pursuant to the plain language of the Means Test form in Line 21, were required to substantiate why such costs were not covered by the Lines 20A and 20B IRS Housing and Utilities Standards and their entitlement to such costs. The Debtors did not substantiate the costs. The flood insurance expense relates to their surrendered home. The condominium fee appears to relate to their timeshare, but is an undocumented and unsubstantiated expense. The Debtors did not establish the Line 21 costs are reasonably necessary costs for their maintenance or support. The Line 21 costs totaling $82.00 are not allowable deductions.

The Debtors claim a deduction of $266.00 for "student loan" as an additional expense claim in Line 56 of their Second Amended Means Test. Line 56 requires additional expense claims must be "required for the health and welfare of you and your family." The Debtors did not substantiate the student loan expense is required for their health and welfare. They did not establish the cost is reasonably necessary for their maintenance or support. The Line 56 cost of $266.00 is not an allowable deduction.

The Debtors claim a deduction of $99.00 for voluntary 401(k) deductions in Line 26 of their Second Amended Means Test. The Means Test specifies: "Do not include discretionary amounts, such as voluntary 401(k) contributions." The $99.00 401(k) expense is not an allowable deduction.

The expenses totaling $447.00 for flood insurance, condominium fees, student loan, and 401(k) contribution are non-allowable deductions. The UST has established the Debtors have monthly income of $5,818.00 and allowable monthly expenses of $3,986.00 resulting in monthly disposable income of $1,832.00 (UST's Exh. No. 7).

The Debtors assert various expenses related to the adoption increase their expenses and further diminish their ability to repay their debts:

(i) They paid legal expenses of $700.00 on August 14, 2006 and $556.00 on January 8, 2007.

(ii) They anticipate further expenses of $9,230.00 consisting of $2,447.00 for "a week's stay in Manila," $150.00 per day in Manila for "food and travel," legal expenses of $1,250.00 to $2,500.00, and $876.00 for an additional plane ticket.

(iii) The Debtors send, via Western Union, funds on a monthly basis to the Philippines for support of Mrs.

Dowleyne's mother, sister, and niece. They sent payments totaling $3,300.00 in 2007 and $3,690.00 in 2008.

(Doc. No. 42).

The expenses of $1,256.00 for attorneys' fees are not relevant since they were incurred and paid pre-petition. The Debtors intend to travel to Manila to complete the adoption process and will incur a one-time post-petition expense for the trip. Their travel plans and related expenses have not been ascertained. The estimated travel expenses of $9,230.00 are speculative. Unknown or one time speculative expenses are not relevant in a Section 707(b)(3)(B) analysis. The legal expenses of $1,256.00 and travel expenses of $9,230.00 are not allowable deductions in calculating disposable income.

The Debtors sent support payments to the Philippines averaging $301.04 per month in 2007 and $509.60 per month in 2008. They incurred Western Union transaction charges of $282.00 in 2007 and $132.00 in 2008 to date. The UST is not objecting to the deduction of the monthly support expense of $509.60 in the computation of disposable income. The monthly support expense of $509.60 is an allowable deduction.

Deduction of the support expense of $509.60 results in monthly disposable income of $1,320.00 ($1,832.00 monthly disposable income as established by the UST less the $509.60 deduction).

The Debtors have substantial monthly disposable income. They have the ability to propose a Chapter 13 plan with payments totaling $47,520 in a thirty-six month plan or $79,200.00 in a sixty-month plan. The approximate dividend to unsecured creditors, exclusive of Chapter 13

administrative expense deductions, in a thirty-six month plan is fifty-percent and in a sixty-month plan is eighty-three percent.

Any potential costs the Debtors may incur relating to finalizing the adoption are onetime post-petition expenses. A meaningful Chapter 13 plan could be proposed anticipating plan payment adjustments when appropriate.

The Debtors have sufficient disposable income to repay their debts. The UST has established, based upon the totality of the circumstances, granting the Debtors relief would be an abuse of the provisions of Chapter 7 pursuant to Section 707(b)(3)(B). Their case is due to be dismissed.

### CONCLUSIONS OF LAW

A Chapter 7 case filed by an individual with primarily consumer debts is subject to dismissal, or conversion with the debtor's consent, if, after notice and a hearing, a Court "finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1) (2007). The standard for dismissal pursuant to Section 707(b)(1) prior to BAPCPA was "substantial abuse."

The 2005 Bankruptcy Code amendments, as is manifest by the legislation's title, "Bankruptcy Abuse Prevention and Consumer Protection Act," were intended to curb what was perceived to be abusive bankruptcy practices, and to ensure debtors with the ability to repay their debts do so:

The purpose of the bill [S. 256] is to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both

debtors and creditors ... The heart of the bills' consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief' or 'means testing'), which is intended to ensure that debtors repay creditors the maximum they can afford.

H.R. REP. No. 109–31, pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89.

Congress created in Section 707(b) a needs-based test to remedy the "inherently vague" "substantial abuse" dismissal standard. *Id.* At 12, U.S.C.C.A.N. at 98. Section 707(b)(3) sets forth two tests for determining abuse:

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal service contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3). The UST seeks dismissal of this case pursuant to Section 707(b)(3)(B).

The Debtors have primarily consumer debts. 11 U.S.C. § 101(8). The Debtors are subject to the provisions of Sections 707(b)(1) and (b)(3). They do not seek rejection of a personal services contract.

### *Totality of the Circumstances*

■ The "totality of the circumstances" test of Section 707(b)(3)(B) focuses solely on a debtor's financial situation and the indicia of bad faith are irrelevant. *In re Parada*, 391 B.R. 492, 499 (Bankr.S.D.Fla. 2008). Congress' creation of the disjunctive provisions (A) and (B) of Section 707(b)(3) establishes "bad faith" "is a ground for 707(b) relief independent of

financial circumstances indicating that the debtor could repay debt." Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr.L.J. 231, 236 (Spring 2005).

■ The core inquiry of a Section 707(b)(3)(B) analysis is whether the debtor's financial situation indicates he has the ability to pay a substantial portion of his unsecured nonpriority debts. *In re Henebury*, 361 B.R. 595, 607 (Bankr.S.D.Fla. 2007). The courts analyze whether a debtor has sufficient projected disposable income to fund a hypothetical Chapter 13 plan, thereby making 11 U.S.C. Section 1325 relevant to a Section 707(b)(3)(B) determination. *Id.* At 611. Section 1325(b)(2) defines "disposable income" as:

(2) Current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable non-bankruptcy law to the extent reasonable necessary to be expended for such child) less amounts *reasonably necessary* to be expended—

(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed.

11 U.S.C. § 1325(b)(2) (*emphasis added*).

■ Post-petition pre-discharge events are relevant to a Section 707(b)(3)(B) analysis. In re *Parada*, 391 B.R. at 500; *In re Henebury*, 361 B.R. at 611. Facts that are "unknown or highly speculative" are not relevant to the analysis. *In re Parada*, 391 B.R. at 502.

■ The Debtors' expenses of $1,256.00 for attorneys' fees incurred and paid pre-

petition are non-deductible and not relevant to the 707(b)(3)(B) analysis. Their estimated Manila travel expenses are speculative and not relevant to the analysis. Any unusual adoption related expenses can be considered when ascertained in adjustment of a Chapter 13 payment schedule.

■ The Debtors' monthly support expense of $509.60 for their family members in the Philippines is an allowable deduction in the computation of their disposable income.

■ The Debtors' expense claims for mortgage and utilities payments for the surrendered house are not allowable deductions. *In re Parada*, 391 B.R. at 502 (holding "when determining the Debtors' projected disposable income, it is appropriate to exclude these deductions as the payments clearly will not be made going forward, and therefore will not negatively impact the Debtors' disposable income.").

■ The Debtors' deduction of $99.00 for 401(k) contributions is not a reasonably necessary expense and is not allowable. *Id.* (holding "absent special circumstances, voluntary contributions to a 401(k) should not be considered reasonably necessary expenses under the totality of the circumstances analysis.").

The Debtors' deduction for flood insurance of $34.00 is not allowable since it relates to the surrendered home. Their deductions for student loans of $266.00 and condominium fees of $48.00 are not reasonably necessary expenses for the Debtors' maintenance or support pursuant to Section 1325(b)(2).[2] Such deductions are not allowable.

■ The Debtors, after removal of the disallowed expenses, have monthly disposable income of $1,320.00. They have the ability of pay a substantial portion of their unsecured nonpriority debts of $95,047.00 through a Chapter 13 plan. They have the ability to make Chapter 13 plan payments totaling $47,520 in a thirty-six month plan or $79,200.00 in a sixty-month plan, resulting in approximate dividends to unsecured creditors of fifty-percent and eighty-three percent, respectively.

The Debtors have a meaningful ability to repay their debts through a Chapter 13 proceeding. The UST has established, based on the totality of the circumstances, granting the Debtors relief would be an abuse of the provisions of Chapter 7 pursuant to 11 U.S.C. Section 707(b)(3)(B). The Debtors' case is due to be dismissed pursuant to 11 U.S.C. Sections 707(b)(1) and (b)(3)(B).

Accordingly, it is

**ORDERED, ADJUDGED AND DECREED** that the UST's Motion to Dismiss is hereby **GRANTED** and the above-captioned case shall be **DISMISSED** pursuant to 11 U.S.C. Sections 707(b)(1) and 707(b)(3)(B). The effective date of this Order is delayed fourteen (14) days to permit the Debtors to consider converting this case to Chapter 13.

---

2. Section 707(b)(2)(A)(ii)(I) of the Bankruptcy Code delineates a debtor's allowable monthly expenses. Debt repayment is specifically disallowed: "Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." 11 U.S.C. § 707(b)(2)(A)(ii)(I).