FILED

SEP 07 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                                ) BAP No.   HI-11-1702-PaJuH
                                      )
CHRISTOPHER DEAN NG and SHEILA        ) Bankr. No. 10-02001
MARIE NG,                             )
                                      )
                 Debtors.             )
_____)
                                      )
                                      )
CHRISTOPHER DEAN NG; SHEILA           )
MARIE NG,                             )
                                      )
                 Appellants,          )
                                      )
v.                                    ) **O P I N I O N**
                                      )
DAVID C. FARMER, TRUSTEE;             )
UNITED STATES TRUSTEE,                )
                                      )
                 Appellees.           )
_____)


Argued and Submitted on July 19, 2012
at Pasadena, California

Filed - September 7, 2012

Appeal from the United States Bankruptcy Court
for the District of Hawaii

Hon. Robert J. Faris and Hon. Lloyd King,
Bankruptcy Judges, Presiding

---

Appearances:   Jean Christensen argued for appellants Christopher
               Dean Ng and Sheila Marie Ng.  Terri Hawkins Didion
               argued for appellee United States Trustee.

Before: PAPPAS, JURY and HOLLOWELL, Bankruptcy Judges.

---

PAPPAS, Bankruptcy Judge:

Christopher Dean Ng and Sheila Marie Ng ("Debtors") appeal the bankruptcy court's order dismissing their chapter 7[1] case under § 707(b)(3)(B). We AFFIRM.

## FACTS

On June 30, 2010, the date Debtors filed a chapter 7 bankruptcy petition, Mr. Ng was employed as an electronic technician for GE International. According to Debtors' original Schedule I, Mr. Ng received $7,439.47 as his monthly salary; he was also eligible for overtime compensation. In addition, he received a military pension of $1,439.88 per month. Mrs. Ng was not employed and had no income.

From Mr. Ng's monthly salary, he made a voluntary contribution of $520.74 to an employer 401(k) plan, and a $343.42 payment on a pension loan. According to their original Schedule J, Debtors' monthly expenses totaled $5,225.00, which included a $300.00 payment on a prepetition income tax liability.

Unsecured debt listed on the Debtors' original Schedule F was $38,261.00, which included three student loans and three credit card accounts. A priority federal tax claim was listed on Schedule E for $10,213.11. Schedule D listed secured claims totaling $484,830.70, of which Debtors suggested that $112,480.70 was unsecured because the assets securing the claims were worth less than the debts. The bankruptcy court would later find that

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

Debtors' primary purpose for filing for bankruptcy relief was to surrender their former residence and discharge the mortgage debt secured by the property in the amount of $464,602.18.

The United States Trustee ("the UST") filed a motion on November 22, 2010 to dismiss the Debtors' bankruptcy case under § 707(b)(1) alleging that granting relief to Debtors would constitute an abuse of the provisions of chapter 7. In particular, according to the UST, a presumption of abuse arose as provided under § 707(b)(2) because: (a) Debtors' income was understated and well above the state median, and (b) they had taken a mortgage deduction on their means test form for real property that the Debtors intended to surrender, thus triggering a presumption of abuse.

The UST also argued that dismissal was in order because, as set forth in § 707(b)(3)(B), based on the totality of the circumstances, Debtors had the financial ability, without hardship, to repay their creditors. In addition to a general challenge based on the amount of Debtors' income, the UST highlighted three areas of concern in gauging their ability to pay their debts: Debtors' voluntary retirement plan contributions, their pension loan repayments, and the existence of the tax debt that could be repaid through a chapter 13 plan.

Debtors opposed dismissal. Regarding § 707(b)(2), they asserted that no presumption of abuse arose in their case because they were allowed to claim the mortgage deduction under the means test even though they intended to surrender the house. They opposed dismissal under § 707(b)(3)(B) because: (1) the bankruptcy court has discretion to determine if retirement contributions are

-3-

a reasonably necessary expense; (2) it was correct for them to take a monthly expense on Schedule J for a prepetition tax liability because, under a hypothetical chapter 13 plan, they would be required to pay the priority tax claim in full; and (3) they disagreed with the UST's calculations of income and expenses.

The bankruptcy court conducted its first hearing on the UST's dismissal motion on January 19, 2011. After hearing from counsel for Debtors and the UST, the court took the issues under submission.

On February 9, 2011, the bankruptcy court entered a Memorandum of Decision concerning the dismissal motion. The court denied the motion to dismiss under § 707(b)(2), ruling that the Debtors "are permitted to deduct their mortgage payments notwithstanding their intentions to surrender the Property." Memorandum of Decision at 7, February 9, 2011.[2] However, the bankruptcy court ordered a further hearing be held on dismissal under § 707(b)(3)(B) to allow the parties to submit additional evidence and information on whether the bankruptcy filing was an abuse under the totality of the circumstances. In doing so, the court expressed particular concern with the Debtors' monthly retirement contributions and pension loan repayments.

On June 9, 2011, in connection with Mr. Ng's employment, Debtors relocated from the island of Hawaii to Maui. Since they were not reimbursed by Mr. Ng's employer for relocation moving expenses, Debtors disclosed to the UST in a July 17, 2011 declaration that they had terminated the monthly retirement plan

_____

[2] The UST has not appealed the bankruptcy court's decision under § 707(b)(2).

-4-

contribution, and that the prepetition pension loan had been repaid.

The bankruptcy court conducted a status conference on the motion to dismiss on September 22, 2011. The UST informed the court that Debtors' retirement contributions had stopped, and that the prepetition pension loan had been repaid. The UST also informed the court that Debtors had submitted updated pay advices to the UST indicating that Mr. Ng received a substantial increase in income over the amount reflected in Debtors' Schedule I. The court directed Debtors to submit revised Schedules I and J and set the final hearing on dismissal under § 707(b)(3)(B) for November 16, 2011.

Debtors submitted amended Schedules I and J on October 3, 2011. Mr. Ng's gross monthly salary had indeed increased from $7,439.00 to $8,804.77. Even though the Debtors had advised the UST in the declaration that they had stopped making the contribution to the 401(k) plan, their amended schedule showed that they resumed pension contributions of $264.16 per month. Further, the amended schedules disclosed that Debtors had again borrowed against Mr. Ng's pension and were making monthly payments of $289.68 to repay that loan.

According to the amended schedules, Debtors claimed their monthly gross income from all sources was $10,295.85 (which included the military pension). The amended Schedule J showed increased monthly expenses, including $400.00 per month for back taxes. Debtors' monthly net income was now allegedly $165.43.

The UST submitted a supplemental brief on the motion to dismiss under § 707(b)(3)(B) on October 26, 2011. The UST

-5-

analyzed Debtors' original and amended schedules, along with the pay advices recently submitted by the Debtors. The UST calculated that, based on the pay advice for the period ending September 18, 2011, year-to-date earnings from Mr. Ng's employment should be $99,508.10, or $11,347.40 per month.[3] Adding the income from the military pension, the UST argued that Debtors had understated their monthly income in their schedules by more than $2,500.00. Additionally, the UST challenged Debtors' renewed 401(k) contribution, the pension loan repayment, and their continued payment of the prepetition tax debt. Based on these calculations, the UST argued that the bankruptcy court should dismiss the case under § 707(b)(3)(B) because, considering the totality of the circumstances, Debtors clearly had the ability to pay their debts from their future earnings without hardship.

On November 2, 2011, Debtors filed a further opposition to the UST's dismissal motion, contending that: (1) the increase in Mr. Ng's pay was the result of overtime hours and there was no expectation that the overtime would continue; (2) the voluntary retirement contributions are not unreasonable given Mrs. Ng's health problems; (3) the new retirement loan was used by Debtors to pay about $8,000.00 in moving expenses. Debtors' declarations were offered to support these expenses and to detail Mrs. Ng's health issues. The declaration from Mr. Ng also provided updated pay advices through November 13, 2011, showing a decrease in his income between September 18 and November 13.

---

[3] The annual pay period ending September 18, 2011 covered 38 weeks. The UST divided the gross amount of $99,508.10 by 38, multiplied that number by 52, and divided by 12 to arrive at a gross monthly income of $11,347.40.

At the beginning of the second hearing on the motion to dismiss on November 16, 2011, the bankruptcy court indicated its concern with what it felt were the dilatory tactics of Debtors:

> You know, I'm troubled with this case. It's taken too long. The U.S. Trustee's office is clearly being jerked around. The facts, the arguments, everything changes on the Debtors' side when things are raised by the Office of the United States Trustee. The case — it's a chapter 7 case. It's — it's a year and a half old. On the other hand, if we believe everything that the Debtors say, there is a certain sympathetic push on their side.

Hr'g Tr. 2:23-3:5, November 16, 2011. After hearing arguments of counsel, the bankruptcy court ruled that Debtors "do have the ability to file a plan in chapter 13." Id. at 23:18-20. The court granted the UST's motion to dismiss the Debtors' bankruptcy case under § 707(b)(3)(B).

The bankruptcy court entered extensive findings of fact and conclusions of law and an order dismissing the bankruptcy case on November 28, 2011. In making its decision, the court applied the criteria in Price v. U.S. Tr. (In re Price), 353 F.3d 1135, 1139-40 (9th Cir. 2004), to determine if the totality of the circumstances justified dismissal under § 707(b)(3). The court pointed out that, even if it accepted Mr. Ng's most recent declaration, with accompanying new pay advices that showed a decrease in annualized monthly income, and even if the court were to allow the pension contributions and pension loan repayments challenged by the UST, Debtors would still have $2,201.33 in net monthly income with which they could repay unsecured creditors.

Nevertheless, the bankruptcy court agreed with the UST regarding the impropriety of allowing Debtors to contribute to the retirement account and access pension loans under these

-7-

circumstances. In part, the court noted that it would be "unfair to creditors to allow the debtors . . . to commit part of their earnings to the payment of their own retirement fund." Conclusion of Law ¶ 30, November 28, 2011. The court observed that Mr. Ng was only 43 years old, and that he had indicated that he would not retire for at least twenty years. Moreover, the court found, the future health expenditures identified for Mrs. Ng were speculative, and that Mr. Ng had an existing military pension. Under these facts, the court concluded that the Debtors' intent to continue monthly contributions to a second pension plan of $264.15 was "not reasonably necessary for the support of Debtors for purposes of analyzing the Debtors' ability to repay creditors." Conclusion of Law ¶ 32, November 28, 2011.

Debtors filed a timely notice of appeal on December 11, 2011.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334(b) and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in dismissing the Debtors' bankruptcy case under § 707(b)(3)(B).

## STANDARD OF REVIEW

A bankruptcy court's decision to dismiss a case under § 707(b)(3)(B) is reviewed for abuse of discretion. In re Price, 335 F.3d at 1138; Gomes v. U.S. Tr. (In re Gomes), 220 B.R. 84, 86 (9th Cir. BAP 1998). In determining whether a bankruptcy court abused its discretion, we review whether the bankruptcy court applied the correct rule of law. United States v. Hinkson, 585

-8-

F.3d 1247, 1262 (9th Cir. 2009) (en banc).  We then determine whether the court's application of that rule was illogical, implausible, or without support in inferences that may be drawn from the facts in the record.  Id. (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 577 (1985)).

**DISCUSSION**

Section 707(b)(1) and (3)(B) of the Bankruptcy Code operate in tandem to allow a bankruptcy court to dismiss a chapter 7 case for abuse of the bankruptcy process based on the totality of the circumstances:

> **§ 707.  Dismissal of a case or conversion to a case under chapter 11 or 13** . . . (b) (1) After notice and a hearing, the court, on . . . a motion by the United States trustee . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter. . . .  (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider– . . . (B) [whether] the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

No guidance is provided in § 707(b)(3)(B) as to the factors a bankruptcy court should consider in evaluating a request for dismissal of a bankruptcy case for abuse under the totality of the circumstances, other than that those circumstances should relate to "the debtor's financial situation."  While BAPCPA changed the standard for dismissal in this context from "substantial abuse" to "abuse," in analyzing the new § 707(b) the courts have recognized that it is "best understood as a codification of pre-BAPCPA case law and, as such, pre-BAPCPA case law is still applicable when determining whether to dismiss a case for abuse."  In re Clark,

-9-

2012 Bankr. LEXIS 1639 * 4 (Bankr. N.D. Cal. 2012)(quoting In re Stewart, 383 B.R. 429, 432 (Bankr. N.D. Ohio 2008)); In re Stewart, 410 B.R. 912, 922 (Bankr. D. Or. 2009). These bankruptcy courts, and the bankruptcy court in this appeal, have therefore continued to apply the non-exclusive list of factors to be considered when evaluating the totality of the circumstances identified for use under pre-BAPCPA Code provisions in In re Price:

> (1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims; (2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity; (3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them; (4) Whether the debtor's proposed family budget is excessive or extravagant; (5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and (6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

353 F.3d at 1139-40. Although the Ninth Circuit indicated that this list was non-exclusive, it also held that:

> The primary factor defining substantial abuse is the debtor's ability to pay his debts as determined by the ability to fund a Chapter 13 plan. Thus, we have concluded that a "debtor's ability to pay his debts will, standing alone, justify a section 707(b) dismissal."

Id. at 1140 (quoting In re Kelly, 841 F.2d 908, 914 (9th Cir. 1988)); see also Reed v. Anderson (In re Reed), 422 B.R. 214, 233 (Bankr. C.D. Cal. 2009)(debtor's ability to pay constitutes abuse under totality of the circumstances test of § 707(b)(3)(B) even if debtor passes the means test of § 707(b)(2)).

Whether a debtor has the ability to repay creditors under § 707(b)(3)(B) is a question of fact that requires a bankruptcy

-10-

court to examine the debtor's actual income and expenses. <u>Ross-Tousey v. Neary (In re Ross-Tousey)</u>, 549 F.3d 1148, 1162 (7th Cir. 2008). In performing this review, "courts may take into account both current and foreseeable circumstances." <u>In re Hartwick</u>, 359 B.R. 16, 21 (D. N.H. 2007); <u>see also</u> <u>Boyce v. U.S. Tr. (In re Boyce)</u>, 446 B.R. 447, 452 (D. Or. 2011); <u>In re Reed</u>, 422 B.R. at 214, 232.

In this case, in evaluating the totality of the circumstances, the bankruptcy court examined Debtors' income and expenditures in two general areas: (1) as proposed in the original dismissal motion of the UST, that three adjustments to income for pension contribution, loan repayment, and tax payment should be disallowed and the freed-up money be made available to creditors; and (2) at the time of rendering the court's final decision, the increase in Debtors' income could be taken into consideration by the court in determining Debtors' net income available for payment to creditors. We perceive no error in the bankruptcy court's analysis and agree with the court that the totality of the circumstances established an adequate basis for dismissal under § 707(b)(3)(B).

A. The Retirement Contribution

In analyzing a § 707(b) motion, the Ninth Circuit has held that bankruptcy courts have discretion to determine whether retirement contributions are a necessary expense for a particular debtor based on the facts of each individual case. <u>Hebbring v. U.S. Tr.</u>, 463 F.3d 902, 905 (9th Cir. 2006). The contributions should be allowed if it appears "reasonably necessary" for the future support of a debtor or the debtor's dependants. <u>Craig v.</u>

*Educ. Credit Mgmt. Co. (In re Craig)*, 579 F.3d 1040 (9th Cir. 2009). Because deciding whether contributions are reasonably necessary involves a factual question, the Ninth Circuit has instructed:

> In making this fact-intensive determination, courts should consider a number of factors, including but not limited to: the debtor's age, income, overall budget, expected date of retirement, existing retirement savings, and amount of contributions; the likelihood that stopping contributions will jeopardize the debtor's fresh start by forcing the debtor to make up lost contributions after emerging from bankruptcy; and the needs of the debtor's dependents.

*Hebbring*, 463 F.3d at 907.

The bankruptcy court expressly discussed the *Hebbring* criteria in its decision. The court first noted that Debtors already were receiving a military pension payment. The court was also cognizant of Mr. Ng's age (forty-three) and the details of Debtors' income and budget. Mr. Ng had informed the UST that he would not retire for at least twenty years. The court reasoned that interrupting Debtors' retirement contributions for the three-to-five year term of a hypothetical chapter 13 plan would have "less of an impact when the retirement will not occur for two decades." Discounting the amount of retirement savings and lost contributions, the court concluded that Mr. Ng "could restart his contributions after completing payments to unsecured creditors and still set aside substantial amounts to fund a second pension fund." This finding is not clearly erroneous.

Debtors' primary concern about disallowance of the 401(k) plan contributions focused on the impact of the future medical bills of Mrs. Ng. Debtors had submitted the declaration of Mrs. Ng wherein she described her medical condition. However, there

-12-

was no evidence submitted from any professionals providing her care. The court had evidence that Debtors had "extensive" medical insurance coverage, and that Schedule J estimated medical expenses of only $100.00 per month. The court decided that Debtors' concerns for the future were understandable but speculative.

Considering the record, the bankruptcy court did not clearly err in finding that the voluntary contribution being made to Mr. Ng's 401(k) plan was not reasonably necessary for Debtors' support, and the court did not abuse its discretion in disallowing the contribution as an adjustment to income.

B. The Pension Loan Repayment

The bankruptcy court also expressed misgivings with Debtors' continued payment of the new pension loan. It noted that a debtor's borrowing from a retirement account does not give rise to a secured or unsecured claim or debt under the Bankruptcy Code, a conclusion supported in the Ninth Circuit decision in Egebjerg v. Anderson (In re Egebjerg), 574 F.3d 1045, 1049 (9th Cir. 2009).[4] For this reason, the bankruptcy court aligned itself with what it described as a majority of courts, agreeing with one such court that,

> Loan repayments to retirement accounts are considered "disposable income" because of their unique character; the debtor is in essence repaying a loan to himself. Thus it would be unfair to creditors to allow the debtors in the present case to commit part of their earnings to the payment of their own retirement fund.

Conclusion of Law ¶ 30, November 28, 2011, citing In re Speith,

---

[4] Debtors object to consideration of Egebjerg in this context because Egebjerg concerned dismissal under § 707(b)(2). However, the UST cited to Egebjerg for the general proposition that a loan from a retirement account is not a debt, a holding upon which the bankruptcy court and this Panel may rely in this setting. Simply put, Egebjerg decided that, via pension loan repayments, a debtor seeking a chapter 7 discharge should not be allowed to pay himself in preference to creditors.

-13-

427 B.R. 621, 625 (Bankr. N.D. Ohio 2009)(quoting In re Gonzalez, 378 B.R. 168 (Bankr. N.D. Ohio 2007); accord In re Zeigler, 2009 WL 5943248 (Bankr. D. Colo. 2009); McVay v. Otero (In re Otero), 371 B.R. 190 (Bankr. W.D. Tex. 2007); In re Esquivel, 239 B.R. 146 (Bankr. R.D. Mich. 1999).

The bankruptcy court concluded that Debtors' pension loan repayment of $238.68 each month should be disallowed as an income adjustment and made available to pay unsecured debts. This ruling was not clearly erroneous. The bankruptcy court did not abuse its discretion in disallowing this payment as an adjustment to Debtors' income.

C. The Tax Payment

Finally, as to the $400.00 monthly payment Debtors were making to satisfy a prepetition income tax liability, the bankruptcy court earlier in the case had observed that such a payment, standing alone, was probably not abusive because the amount Debtors proposed to exclude from their income on account of the payment was only "slightly higher than the amount they would have to pay under a chapter 13 plan." Memorandum of Decision at 11, February 9, 2011. However, the court changed its position after the final hearing on dismissal. Instead, the bankruptcy court determined that the tax debt was "a prepetition debt that would be paid in full using the Debtors' excess income in a chapter 13 plan." Conclusion of Law ¶ 33, November 28, 2011. If Debtors paid the tax debt through a chapter 13 plan, it could be satisfied with payments of $170.00 per month rather than the Debtors' proposed $400.00 per month in chapter 7. Therefore, in a chapter 13 plan, Debtors would have an extra $230.00 per month

-14-

that could be used to pay unsecured creditors. The bankruptcy court did not abuse its discretion in disallowing the $400.00 adjustment to income for purposes of analyzing Debtors' ability to pay creditors.

D. Debtors' Objections to the Disallowed Income Adjustments

Debtors challenge the bankruptcy court's decision to disallow the pension contribution and loan repayment. They argue that the UST failed to meet its burden of proving grounds for disallowance of these payments at the first hearing on the motion to dismiss on January 19, 2011. Specifically, Debtors cite to the bankruptcy court's Memorandum of Decision entered after that hearing, wherein it stated:

> There is not enough evidence for me to determine whether the Craig factors[5] are met. The only evidence offered by the U.S. Trustee, which bears the initial burden, is Mr. and Mrs. Ng's testimony that they do not anticipate retiring for about twenty years, and Mr. Ng is already receiving some retirement income from another source. Although the debtors do not bear the burden of proof, Mr. and Mrs. Ng have not provided any evidence that these contributions are reasonable and necessary for their family's maintenance and support.

Memorandum of Decision at 11, February 9, 2011. In their opening brief in this appeal, Debtors argue that this excerpt from the bankruptcy court's decision represents a ruling by the court that the UST failed to carry its burden of proof on the pension contribution/loan payment issues because it did not offer evidence to address several of the Hebbring criteria:

> No evidence was offered as to the Ngs' then-existing retirement savings or as to whether stopping all

_____

[5] In In re Craig, the Ninth Circuit panel adopted the Hebbring factors in determining whether retirement contributions should be allowed. 579 F.3d at 1047.

-15-

retirement contributions for 60 months would jeopardize their ability to retire at a reasonable level of comfort.

Debtors' Op. Br. at 29.

Of course, Debtors' argument incorrectly assumes that the UST must submit proof concerning all the Hebbring factors to establish that pension contributions or pension loan repayments should be disallowed in a given case. Instead, the Ninth Circuit merely instructs that bankruptcy courts "should consider" the nonexclusive list of Hebbring factors. There is no requirement that proof of all the factors be submitted.

The bankruptcy court acknowledged that it had considered the evidence offered by the UST on at least two of the Hebbring factors: Mr. Ng's age, and his expectations of working at least twenty more years. Although not explicitly acknowledged, the court also had before it evidence that Debtors were receiving a military pension. Debtors' complaint that the UST had not adequately investigated the amount of their available savings is disingenuous because they provided inconsistent statements to the UST regarding those savings. And although Debtors' original schedules I and J had indicated a loan repayment and pension contribution, they had denied that they had any retirement savings plan or pension in their original Schedule B at line 12. Dkt. No. 1 at 33.

In commenting on its decision to require Debtors to provide evidence on the reasonableness of their contributions and repayments to the retirement plan, the court observed:

What do the Debtors reasonably need to have in their retirement plan? That's the bottom line. Does the money end up in the retirement plan or does it go to the

-16-

Creditors? And if they have a reasonable need for that, then maybe it's not abusive, but if they don't have a reasonable need for that, in light of all their circumstances, then perhaps it is abusive.

Hr'g Tr. 5:19-25, February 23, 2011. Fairly read, the bankruptcy court's comments noted that, from the evidence submitted thus far, Debtors must establish a reasonable need for the pension plan contributions and loan repayments, or the bankruptcy court might consider them, in light of the totality of the circumstances, to be abusive. We consider the bankruptcy court's statements as an acknowledgment that the UST had established sufficient facts to shift to the debtors the burden to produce other evidence to show the reasonableness of the contributions and repayments. It was not an error for the bankruptcy court to continue the dismissal motion for a further hearing to afford Debtors the opportunity to do so. Trial courts are vested with "ample discretion to control their dockets." Med. Lab. Mgmt. Consultants v. Am. Broad. Co., 306 F.3d 806, 826 (9th Cir. 2002). This discretion necessarily includes the option to refuse to rule on particular issues, id., and to consider additional evidence. Pit River Home & Agr. Coop. Ass'n v. United States, 30 F.3d 1088, 1096 (9th Cir. 1994).

In sum, we conclude that the bankruptcy court did not err in its decision to disallow Debtors' pension contribution, loan repayment and tax payment[6] as adjustments to income in its

_____

[6] In this appeal, Debtors' have paid little attention to the fact that they were making payments on their prebankruptcy tax debt. They address this circumstance is a single sentence in their brief: "The Ngs submit that the court erred in disallowing the tax payment for purposes of section 707(b)(3)(B), because in a hypothetical chapter 13 case, the Ngs would be required to pay this priority tax in full except in the unlikely event that the Internal Revenue Service agreed to different treatment of the
(continued...)

-17-

§ 707(b)(3) abuse analysis. Even if it were not to consider the increases in Debtors' income following the first hearing on dismissal, the evidence showed that Debtors could potentially pay their creditors an additional $1,466.38 per month over the modest amounts they acknowledged. Since Debtors had the ability to pay such a significant amount to their creditors, under the totality of the circumstances, granting them relief under chapter 7 case would be an abuse, and the bankruptcy court properly dismissed the case under § 707(b)(3)(B).

## E. The bankruptcy court did not abuse its discretion in considering the increased income of Debtors.

The bankruptcy court also determined that Debtors' ability to pay their unsecured creditors was further enhanced by the increases in Mr. Ng's income that occurred after the first hearing on dismissal. We find no abuse of discretion in this determination because, simply put, as the weight of authority instructs, the bankruptcy court may properly consider changes in Debtors' circumstances, and events affecting their income and expenses, that occur between the time of the petition, the filing of the motion for dismissal, and the time of any decision on the § 707(b) motion.

The Fifth Circuit addressed this issue in U.S. Tr. v. Cortez (In re Cortez), 457 F.3d 448, 455-56 (5th Cir. 2006). It held

[6](...continued) claim." Debtors' Op. Br. at 36. It is true that Debtors must pay this debt, and it is not subject to discharge in a chapter 7 case. However, the bankruptcy court could properly consider the payment as a measure of Debtors' ability to pay their debts. Moreover, because the tax debt need only be repaid in full over the full term of a hypothetical chapter 13 plan, Debtors would have additional funds monthly to pay to their other creditors because the per month payment to the IRS would be less.

-18-

that the ability to repay creditors is based on the debtor's financial circumstances at the time of discharge. Id. This conclusion was based on the plain text of § 707(b)(1), which requires the bankruptcy court to determine whether "the granting of relief" would be an abuse of chapter 7. The court explained that "the granting of relief" is a reference to the discharge a debtor receives in a chapter 7 case, and therefore the bankruptcy court "may act on the basis of any development occurring before the discharge is granted." Id. Although the Cortez decision was based on pre-BAPCPA law, Congress did not change the statutory language requiring the bankruptcy court to determine whether "the granting of relief" to the debtor would constitute an abuse. Compare § 707(b)(1986) with § 707(b)(1)(2006).[7] The Supreme Court has cautioned that we should "not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." Hamilton v. Lanning, 130 S.Ct. 2464, 2473 (2010). No intent by Congress to change the rule announced in Cortez is evident from BAPCPA.

Moreover, Debtors concede that the case law lines up against them on this issue:

> The Ngs acknowledge that a majority of courts [have] held that it is appropriate to look at post-petition events affecting income and expenses in evaluating whether the granting of relief would be an abuse under section 707(b)(3). See, e.g., In re Crink, 402 B.R. 129, 170-76 (Bankr. M.D.N.C. 2009); In re Dowleyne, 400 B.R. 840, 846 (Bankr. M.D. Fla. 2008); In re Henebury, 361 B.R. 595, 607-11 (Bankr. S.D. Fla. 2007); and In re Pennington, 348 B.R. 647, 651 (Bankr. D.Del. 2006).

Debtors' Op. Br. at 31.

---

[7] BAPCPA divided the older § 707(b) into seven subsections. The new § 707(b)(1) retains the wording "the granting of relief" and context from the older statute.

-19-

In reviewing Debtors' income and expenses, the bankruptcy court examined each of the Price factors, "in particular reviewing the Debtors' ability to repay creditors over time." Finding of Fact ¶ 26, November 28, 2011. In its decision, the bankruptcy court found that, even accepting Mr. Ng's declaration filed shortly before the last hearing showing a decrease in income for the preceding two months, Debtors' gross monthly income from wages and his military pension totaled $12,231.86. As it noted, even if the bankruptcy court were to allow Debtors to make the pension plan contributions and loan and tax payments opposed by the UST, Debtors would still have over $2,200.00 in net monthly income with which they could repay unsecured creditors. But, as discussed above, if those three monthly expenditures are disregarded, the court calculated that the Debtors' monthly net income available for payment to unsecured creditors would be $3,155.17.

Given these amounts, the bankruptcy court concluded that Debtors "have the ability to repay unsecured creditors over time." Conclusion of Law ¶¶ 34, 35, November 28, 2011. This analysis satisfied the first Price criterion, and the Panel is satisfied that it alone justifies dismissal under § 707(b)(3)(B). But the bankruptcy court also found that two other Price criteria were satisfied. The court found that the bankruptcy filing was not caused by illness, disability, unemployment or other calamity. In addition, the court determined that the Debtors' amended Schedules I and J "understated the debtor's gross wages received in 2011." Conclusion of Law ¶ 36, November 28, 2011.

Debtors' objections to the bankruptcy court's consideration of their post-motion increase in income fall into two categories:

(1) they object to the bankruptcy court's conclusion that they understated their income, and its calculation of net monthly income; and (2) they object that their increase in income was a circumstance not discussed "with particularity" in the UST's original motion to dismiss and, thus, the UST and bankruptcy court were precluded from considering these circumstances by Rule 1017(e). Debtors' objections lack merit.

As to the court's conclusions regarding increases in income, the UST had provided evidence to the court that there was an increase in the Debtors' income between amounts listed in the original schedules and amended schedules. The UST also submitted pay advices, provided by Debtors, showing an additional significant income increase during the summer months of 2011, which was not reflected in their amended Schedules I. Debtors did not dispute that they experienced some increase in income during the pendency of the bankruptcy case. However, they contended that the inclusion of the "spike" in income during the summer months of 2011 was inappropriate for purposes of weighing the UST's dismissal motion because, as stated in the declaration of Mr. Ng, "I have no reason to expect that my work hours will increase in the foreseeable future." In response, the UST objected both to the timeliness[8] of Mr. Ng's declaration, as well as his competence to testify regarding future employment hours. Significantly, Debtors provided no evidence from the employer regarding Mr. Ng's

---

[8] The Ng declaration regarding the summer spike was submitted the night before the final hearing on the motion to dismiss. Although the bankruptcy court did not strike the declaration as the UST requested, it did cite the late submission as an example of how "[t]he U.S. Trustee's office is clearly being jerked around."

-21-

potential future overtime.

We decline to disturb the bankruptcy court's calculations of Debtors' monthly net income. The UST's evidence showed, without contradiction, that Mr. Ng's earnings had substantially increased during the bankruptcy case, even excluding the summer income spike, as compared with Debtors' proof suggesting that Mr. Ng was not expecting future overtime income. In making a choice between these two versions of the facts, the bankruptcy court did not clearly err in finding that Debtors had incorrectly stated their income and expenses on their amended schedules, nor did it err in its calculations that Debtors had significant net monthly income with which to pay unsecured creditors. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. Kekauoha-Alisa v. Ameriquest Mortg. Co. (In re Kekauoha-Alisa), 674 F.3d 1083, 1092 (9th Cir. 2012) (citing Anderson, 470 U.S. at 574).

While these factual findings are sufficient for us to affirm the bankruptcy court's dismissal order, we also agree with the bankruptcy court's decision to disallow the three adjustments to income urged by Debtors in this case. Consequently, the bankruptcy court could properly conclude that the Debtors' monthly net income at the time of the second hearing was $3,155.17. We agree with the bankruptcy court that this sum demonstrated that the Debtors have the ability to repay unsecured creditors over time. Because the Debtors had the ability to repay their creditors, under the Price criteria, dismissal of the chapter 7 bankruptcy case under § 707(b)(3)(B) as an "abuse" was justified.

Debtors also argue that the bankruptcy court could not take

-22-

into consideration their post-bankruptcy increase in income, because it was not pleaded "with particularity" in the UST's original motion to dismiss. Debtors based this contention on Rule 1017(e), which provides in relevant part:

> (e) Dismissal of an individual debtor's chapter 7 case, or conversion to a case under chapter 11 or 13, for abuse. The court may dismiss or, with the debtor's consent, convert an individual debtor's case for abuse under § 707(b) only on motion and after a hearing on notice to the debtor, the trustee, the United States trustee, and any other entity as the court directs. (1) Except as otherwise provided in § 704(b)(2), a motion to dismiss a case for abuse under § 707(b) or (c) may be filed only within 60 days after the first date set for the meeting of creditors under § 341(a), unless, on request filed before the time has expired, the court for cause extends the time for filing the motion to dismiss. The party filing the motion shall set forth in the motion all matters to be considered at the hearing. In addition, a motion to dismiss under § 707(b)(1) and (3) shall state with particularity the circumstances alleged to constitute abuse.

Rule 1017(e). Debtors argue that Rule 1017(e)(1) required the UST to plead with particularity all circumstances it contends constitute abuse in its dismissal motion, and that the UST was thereafter barred from relying upon other facts or circumstances to support dismissal in subsequent pleadings or proceedings.

The language of the Rule does not support Debtors' interpretation. The Rule requires the UST to "set forth in the motion all matters to be considered at the hearing." The UST complied with that requirement by arguing "with particularity" in its original motion that Debtors had sufficient income to pay unsecured creditors, and that three adjustments to the amount of income advocated by Debtors were required. The hearing required by Rule 1017(e) was held, and the UST presented its evidence. Although the UST's evidence was not deemed conclusive by the

-23-

bankruptcy court as a result of the first hearing, the court implicitly determined that the UST had offered sufficient evidence to require that Debtors justify their proposed deductions from income. This required a continued hearing. But before the hearing was conducted, fundamental changes in Debtors' financial situation occurred. At the hearing, the bankruptcy court was required to consider both Debtors' present and foreseeable circumstances. When it did, it decided that Debtors could pay their creditors, and that dismissal under § 707(b)(3)(B) for abuse was proper.

Debtors argue in their briefs that "The Ngs respectfully suggest that Rule 1017(e)(1) generally provides a sensible and just cutoff for the consideration of post-petition events in a section 707(b)(3)(B) motion." Reply Br. at 10. However, Debtors' narrow reading of Rule 1017(e)(1) is unsustainable in light of the requirements of § 707(b)(1) and the cases interpreting it. To hold that § 707(b)(1)'s requirement that the bankruptcy court determine whether "the granting of relief" would be an abuse of chapter 7 is limited to facts existing at the time of the filing of their petition, or the UST's motion to dismiss, would deprive the bankruptcy court of considering "any development occurring before the discharge is granted." In re Cortez, 157 F.3d at 455. Adoption of Debtors' approach violates a basic rule of construction of the Code: that any real or perceived conflict between a provision of the Bankruptcy Code and a Rule must be resolved in favor of the Bankruptcy Code. See 28 U.S.C. § 2075; United States v. Towers (In re Pac. Atl. Trading Co.), 33 F.3d 1064, 1066 (9th Cir. 1994). We thus reject Debtors' argument that

-24-

Rule 1017(e)(1) limits a bankruptcy judge's discretion to consider post-petition changes in a debtor's circumstances in examining the totality of the circumstances in making its final determination on a request for dismissal under § 707(b)(3)(B).

All things considered, we conclude that the bankruptcy court applied the correct legal rules in making its rulings, and its findings were not illogical, implausible, or without support in inferences that may be drawn from the facts in the record.  The bankruptcy court therefore did not abuse its discretion in dismissing Debtors' bankruptcy case under § 707(b)(3)(B).

## CONCLUSION

We AFFIRM the decision of the bankruptcy court.