**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-15-1328-KiTaKu |
| MINON MILLER, | Bk. No.   2:13-bk-35116-RK |
| Debtor. | |
| MINON MILLER, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| EDWARD GILLIAM, | |
| Appellee. | |

Submitted Without Oral Argument
on September 22, 2016

Filed - October 13, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Robert N. Kwan, Bankruptcy Judge, Presiding

Appearances:   Appellant Minon Miller, pro se, on brief;
Appellee Edward Gilliam, pro se, on brief.

Before:   KIRSCHER, TAYLOR and KURTZ, Bankruptcy Judges.

---

[1]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Chapter 7[2] debtor Minon Miller appeals an order granting the motion of creditor Edward Gilliam to dismiss her bankruptcy case for bad faith under § 707(b)(3)(A). The bankruptcy court also dismissed Debtor's case with prejudice under § 349(a), with a permanent bar to refiling. We AFFIRM.[3]

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. Prepetition events**

**1. History of state court litigation between the parties**

Debtor, a self-employed income tax preparer and casual longshoreman, and Gilliam met in March 2007, when Debtor entered into a lease, with option to buy, for Gilliam's home in Carson, California ("Kemp home"). The Kemp home rental spawned the non-stop, contentious litigation that has been going on between them ever since, to the point where Gilliam obtained a permanent restraining order against Debtor.

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] Gilliam objects to certain documents Debtor submitted as part of her excerpts of the record. Specifically, he objects to Exhibits 1, 2, 3, 4, 5, 6, 19, 20, 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 39, 40, 41, 42, 43, 44, 45, 46 & 47 on the basis of "lack of foundation" and/or "relevance." For starters, what Gilliam raises are trial-level objections not suitable for an appeal. Moreover, Debtor's Exhibits 1-6, 23-30 & 39-46 were admitted at trial and therefore are appropriately part of the appellate record. Thus, Gilliam's request that we not consider these Exhibits is DENIED.

This leaves his objection to Exhibits 19, 20, 31, 33, 34, 35 & 47. Debtor attempted to offer these Exhibits at trial; they consist of documents from either Gilliam's own bankruptcy case or documents from state court proceedings between the parties. The bankruptcy court rejected these Exhibits based on lack of relevance. However, because Debtor challenges the court's decision to not admit these Exhibits, it is appropriate for us to consider them. Therefore, Gilliam's request that we not consider Exhibits 19, 20, 31, 33, 34, 35 & 47 is also DENIED.

Through multiple legal actions, Gilliam recovered against Debtor: (1) a judgment in one of three unlawful detainer actions; (2) an award for attorney's fees in a Civil Harassment action; and (3) a default judgment, after prove up hearings, for fraudulent conveyances, malicious prosecution and injunctive relief. The state court subsequently added Debtor's limited liability company, Nonim, LLC ("Nonim"), the entity receiving the fraudulent conveyances, as a party liable under the judgments.

To aid in execution of Gilliam's outstanding judgments against Debtor and Nonim, the state court appointed a receiver. Although the Receiver never received any documents from Debtor, he did obtain important Nonim financial records from third parties, which the bankruptcy court relied upon for its finding of Debtor's bad faith. The Receiver obtained Nonim's checking account bank statements from Wells Fargo for the periods of January to April 2012 and January to August 2013. Debtor was the only signatory on Nonim's bank accounts. The Receiver also obtained records from the Santa Barbara Tax Program Group ("TPG"). TPG was the third party tax return processing firm that did electronic filings of income tax returns for Debtor. As shown by the bank and TPG statements and as explained by Debtor, she prepared tax returns as MTD Miller Income Tax Service and electronically filed them for her clients through TPG; the fees Debtor earned were paid from her client's tax refunds, and TPG electronically deposited these fees into a Nonim checking account.

TPG prepared annual accounting statements of the fees deposited into Nonim's bank account in 2012 and 2013. The statement for 2012 reflected deposits of $422,616.15 into Nonim's

-3-

checking account, with the majority of the funds being deposited between January and April 2012. Thus, Nonim's gross income for 2012 was $422,616.15, as reflected by the tax return preparation fees paid by TPG for that year. This was corroborated by Nonim's bank statements from January through April 2012, which reflected TPG deposits totaling $404,036.15. In 2013, TPG deposited $102,810.67, with the majority of the funds being deposited between February and May 2013. Thus, Nonim's gross income for 2013 was $102,810.67. Nonim's bank statements from February through May 2013 reflected the respective TPG deposits totaling $102,810.67. Therefore, in 2012 and 2013 Nonim had a gross income of $523,426.82 from fees generated by Debtor's personal services as a tax return preparer.

On September 25, 2013, the state court granted the Receiver's motion to abandon Nonim's leased premises, as there were no funds to pay the rent. That same day the Receiver's office notified Debtor by email that she could pick up the keys to her office. A few weeks later, Debtor filed the instant bankruptcy case.

### 2. Gilliam's bankruptcy filings and related litigation with Debtor

The litigation between Debtor and Gilliam did not stop with the state court. Gilliam filed three bankruptcy cases in 2008; the first two were dismissed for failure to file documents. During the course of Gilliam's third case, Debtor filed a § 523 dischargeability action against him. Debtor was unsuccessful and Gilliam was awarded $27,800 in attorney's fees. Debtor also unsuccessfully sought to have Gilliam's discharge revoked under § 727(d).

-4-

The bankruptcy court also found Debtor in contempt for filing state court actions against Gilliam in violation of the discharge injunction. Debtor was ordered to dismiss the state court actions. When Debtor failed to dismiss them, the bankruptcy court found her in contempt for a second time.

### 3. Debtor's prior bankruptcy filings and related litigation with Gilliam

Debtor is no stranger to bankruptcy either. By her own admission, she has filed five previous cases, two of which were not disclosed until the chapter 7 trustee discovered them. Her first case was filed in 1985 (2:85-06506); she received a discharge. Her second case was filed in 1997 (2:97-28727). She appears to have received a discharge in that case. Her third case, a chapter 7 (2:05-47679), was filed eight years later on October 14, 2005. She received a discharge in that case in July 2006. Her fourth case, her first chapter 13 (2:11-32470), was filed on March 30, 2011, and dismissed on April 27, 2011, for failure to file documents. Her fifth case, a second chapter 13 (2:11-32470), was filed on May 24, 2011. It was dismissed for bad faith on Gilliam's motion.

### B. Postpetition events

#### 1. Debtor's instant bankruptcy filing

Debtor filed this chapter 7 case, her sixth bankruptcy case, on October 15, 2013. She indicated that most of her debts were consumer debts.

Debtor listed a 100% interest in Nonim in her Schedule B, noting the entity was insolvent. Debtor's Schedule F reflected a total unsecured debt of $245,936, a good portion of which was

attributed to Gilliam. Debtor filed two Schedule I's. In one she declared gross monthly income of $2,397.44 as a casual longshoreman; in the other, she declared in response to Item No. 7 that she was a self-employed tax preparer for fourteen years and had regular income of $3,000 per month from the operation of her business. Debtor did not attach any detailed statement for her business as instructed by Item No. 7. She indicated that, although Nonim was insolvent, her tax preparer license was current and that she would work as an independent contractor.

In her SOFA, Debtor declared in Item No. 18 that she was a member of Nonim and that it was "DBA: MTD Miller Income Tax Service (Tax Prep)" from 2010 to the present. For Item No. 1, Debtor stated that her income from Nonim for 2012 and 2013 was "approx. 98,500.00" and "approx. 45,877.00," respectively.

**2.    Gilliam's motion to dismiss Debtor's chapter 7 case**

Gilliam moved to dismiss Debtor's case for bad faith under § 707(b)(3)(A) on November 12, 2013, which was followed by an amended motion on November 14, 2013 ("Motion to Dismiss"). Gilliam contended that Debtor's case, which coincidentally was filed exactly eight years after receiving her last chapter 7 discharge, was another serial and abusive filing to avoid paying his valid judgments.

Debtor opposed the Motion to Dismiss. She contended that her case had not been filed in bad faith but was filed because her financial position had changed: her business was insolvent and her income was insufficient to pay her medical expenses. She then spent a great deal of time discussing the background of the Default Judgment, arguing that Gilliam obtained it fraudulently.

-6-

She also accused Gilliam of engaging in fraud in his chapter 7 bankruptcy case. Debtor also disputed that her second chapter 13 case was dismissed for bad faith. She accused Gilliam of getting the bankruptcy court to sign an order saying the case was dismissed for bad faith, even though (she claimed) the bankruptcy court had made no such ruling at the dismissal hearing.

One day before the hearing on the Motion to Dismiss, Gilliam filed a "supplemental motion to dismiss," which essentially was a reply brief to the Motion to Dismiss. Gilliam contended that he would have filed it sooner had he been timely served with Debtor's opposition. Gilliam now requested that Debtor's case be dismissed with prejudice under § 349(a) with a four-year refiling bar. Gilliam also contended that Debtor had grossly under-reported her income for the years 2012 and 2013, noting that Nonim/Debtor had collected over $500,000 in fees during that two-year period.

An initial hearing on the Motion to Dismiss was held on December 3, 2013. The bankruptcy court noted the lateness of Gilliam's supplemental brief but decided that, because the matter would be set for trial, Debtor would have an opportunity to respond to any new allegations he raised.

**3. Trial on the Motion to Dismiss**

At trial the Receiver, Gilliam and Debtor testified. Because Debtor was appearing pro se and was called by Gilliam as an adverse witness, the bankruptcy court went to painstaking lengths to explain to Debtor how her testimony would proceed. The record shows that the court treated her with great leniency and allowed her to provide narrative testimony.

For SOFA Item No. 1, Debtor testified that she reported the

-7-

approximate net earnings she received as an "employee" from Nonim for 2012 and 2013, not the gross earnings of Nonim, which she alleged was the way someone at the court-sponsored bankruptcy clinic told her to report her income. When asked why the reported income figures for 2012 and 2013 were "approximate," Debtor explained that she subtracted out what she "guesstimated" Nonim's expenses were for those years. She had to "guesstimate" expenses and income because she had not yet filed any tax returns for her or for Nonim for 2012 and 2013. Trial Tr. (June 12, 2014) 252:14-255:3; 270:1-25; 294:1-296:12; 298:4-12; 299:15-23; 300:6-301:2; 301:11-302:4. She asserted that she did not know how to report earnings for Nonim, a single member LLC. Id. at 296:17-297:4. Debtor explained that she had the option of reporting Nonim's income as a sole proprietorship, in which case the income flowed to her personally, or as a corporation; her intent was to file Nonim's taxes as a corporation. Id. at 253:16-254:1.

The bankruptcy court questioned Debtor extensively about what she contended were legitimate and deductible business expenses of Nonim, which were recorded in the submitted bank statements. In particular, the court asked about multiple disbursements for hair salons, spas, restaurants, high-end clothing and shoe stores, hotels, and trips to New Orleans and Las Vegas. Debtor explained that these expenses were incurred for the purpose of attracting low-income clients, which made up a large part of her business, and employee training and incentives. Id. at 272:1-293:17. Regarding multiple, large cash withdrawals in 2012, Debtor explained that most were for payroll for her independent contractors, who she paid with cashier's checks. Debtor testified

-8-

that information regarding who was paid with these checks was in books she could not locate. Id. at 277:12-278:4, 280:23-281:6, 281:7-12.

Debtor asserted that she filed this chapter 7 case because she had been ill and incurred significant medical expenses. Id. at 329:6-24. She also stated that she could not pay her bills because of the receivership. Debtor contended that she was unable to do any tax preparation since July 2013 because she was locked out of her office and had no access to her business records. Id. at 329:25-332:2. In sum, Debtor explained that she had to file this case because of her insufficient income, her failed business and her "mountains of medical bills." Id. at 346:4-13. Her only evidence of medical expenses, however, was her bankruptcy schedules. Out of the $245,936 listed as unsecured debt in her Schedule F, Debtor listed approximately $25,616.46 in medical debt.

After hearing testimony from the witnesses, the bankruptcy court ordered the parties to file additional briefing on the issues of (1) whether Debtor should have reported Nonim's gross or net income in her bankruptcy schedules and SOFA; and (2) In re Mitchell, 357 B.R. 142 (Bankr. C.D. Cal. 2006), which set forth factors a court can consider when dismissing a chapter 7 case for bad faith under § 707(b)(3)(A). Trial was continued for closing argument.

In his brief on the LLC tax issue and Mitchell factors, Gilliam argued that, under the Federal Tax Code, a business entity with only one owner must make an election to be treated as a corporation or the default is that the entity will be disregarded.

-9-

Because Debtor had not filed, or showed any evidence of filing, Form 8832 (Entity Classification Election) with the Internal Revenue Service, Gilliam argued that Debtor had not made the election to have Nonim treated as a separate entity. Thus, it was to be treated as a sole proprietorship. Accordingly, argued Gilliam, as the sole member of Nonim, Debtor had to disclose Nonim's gross income in her SOFA. Gilliam alleged Debtor had failed to disclose $324,116 of income for 2012 and $71,687.30 for 2013, for a total understatement of income of $395,803.30.

At the continued trial Debtor claimed that she had filed a Form 8832 with the IRS (but apparently did not have a copy of it to submit that day), the bankruptcy court, thus, agreed to reopen evidence for the limited purpose of allowing Debtor to produce a conformed copy of Form 8832 and be cross-examined. Trial again was continued.

On the final day of trial, Debtor testified that she sent her Form 8832 to the IRS in July 2010 by certified mail seeking to have Nonim treated as a corporation. As reflected in the General Instructions for Form 8832, the IRS informs taxpayers within 60 days of filing whether or not the election to treat an LLC as a corporation has been accepted. Debtor admitted she had not received an approval letter but alleged that she believed the IRS approved the election because she had the proof of mailing. Debtor also testified that she followed up with the IRS via a letter in December 2011 to check the status of the election, but she said nothing about whether the IRS got the letter or indicated that it was or was not approved. Trial Tr. (Nov. 12, 2014) 10:1-11:24, 12:24-13:12, 17:11-13.

-10-

**4.    The bankruptcy court's ruling**

The bankruptcy court issued its Order, 39-page Memorandum Decision and separate 45-page Findings of Fact and Conclusions of Law for the Motion to Dismiss on September 9, 2015.  The court determined that Gilliam had met his burden and proved that Debtor's chapter 7 case had been filed in bad faith and should be dismissed with prejudice under § 349(a).  This appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A).  We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1.    Did the bankruptcy court abuse its discretion in dismissing Debtor's case for bad faith?

2.    Did the bankruptcy court abuse its discretion in dismissing Debtor's case with prejudice?

## IV. STANDARDS OF REVIEW

Whether an appellant's due process rights were violated is a question of law we review de novo. DeLuca v. Seare (In re Seare), 515 B.R. 599, 615 (9th Cir. BAP 2014).

We review the bankruptcy court's finding of "bad faith" for clear error, and its decision to dismiss a case with prejudice for abuse of discretion. Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1223 (9th Cir. 1999); Ng v. Farmer (In re Ng), 477 B.R. 118, 125 (9th Cir. BAP 2012) (dismissal under § 707(b).  Factual findings are clearly erroneous if they are illogical, implausible or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

The bankruptcy court's evidentiary rulings are also reviewed

-11-

for abuse of discretion. <u>Ardmor Vending Co. v. Kim (In re Kim)</u>, 130 F.3d 863, 865 (9th Cir. 1997). To reverse on the basis that an evidentiary ruling was erroneous, we must conclude not only that the bankruptcy court abused its discretion but also that the error was prejudicial. <u>See</u> <u>McEuin v. Crown Equip. Corp.</u>, 328 F.3d 1028, 1032 (9th Cir. 2003). An evidentiary ruling is prejudicial if it is more probable than not that the erroneous ruling tainted the judgment. <u>Id.</u>

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are clearly erroneous. <u>TrafficSchool.com, Inc. v. Edriver Inc.</u>, 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

Debtor's brief borders on incomprehensible. It raises a number of arguments, many of which are not relevant or are not supported with any legal authority or even citation to the record. Debtor also asserts that her second chapter 13 case was not dismissed for bad faith; it clearly was. Notably, the bankruptcy court found much of her testimony not credible. We give great deference to the bankruptcy court's findings when they are based on its determinations as to the credibility of witnesses. <u>In re Retz</u>, 606 F.3d at 1196.

Before we discuss Debtor's arguments that go more to the bankruptcy court's finding of bad faith, we begin by discussing what appear to be due process or evidentiary arguments.

First, we reject her overall complaint that the bankruptcy court could not consider Gilliam's supplemental (reply) brief filed in support of the Motion to Dismiss. Granted, in that

-12-

brief, Gilliam raised new arguments: that Debtor's case should be dismissed with prejudice under § 349(a) with a four-year refiling bar and that she had grossly under reported her income for the years 2012 and 2013. The bankruptcy court, however, did not consider those late arguments at the scheduled hearing on December 3, 2013. Rather, because of the nature of the dispute, which appeared to be evolving as it went along, the court decided to set the matter for trial; the court thereby ensured Debtor's right to due process. Debtor was given several months to file a written response to those new arguments (and any other arguments Gilliam raised), but she failed to provide any written response. She also failed to file a trial brief. Thus, Debtor's argument that the bankruptcy court denied her due process by considering the December 2 brief or that it was prohibited from considering the brief lacks merit. See Tennant v. Rojas (In re Tennant), 318 B.R. 860, 870 (9th Cir. BAP 2004) (concept of procedural due process requires notice and an opportunity to be heard).

Also, to the extent Debtor disputes the bankruptcy court's admission of Nonim's bank statements over her objection at trial, she has shown neither abuse of discretion nor the requisite prejudice. McEuin, 328 F.3d at 1032. Even without the bank statements, other facts in the record support a bad faith finding. Plus, Debtor's primary objection appears to be that Gilliam should not have been able to offer the bank statements because he did not conduct discovery. We fail to see the point. Gilliam obtained the bank statements, whose authenticity was not disputed by Debtor, from the Receiver. We presume, however, that Gilliam otherwise would have requested them from Debtor in discovery, that

-13-

she would have produced them and that they would reflect the same information. In addition, Gilliam listed the bank statements on his exhibit list filed several months before trial; Debtor had both notice that they would be at issue and the time necessary to object.

The same is true with the exhibits Debtor tried to offer at trial regarding Gilliam's prior bankruptcy case. Although she fails to list them in her brief, they appear to be Debtor's Exhibits 19, 20, 31, 32, 33, 34 and 35. The bankruptcy court denied their admission based on the lack of relevance. The court determined that events which transpired in Gilliam's bankruptcy case and his conduct in state court proceedings were irrelevant in determining whether Debtor's bankruptcy case was filed in bad (or good) faith. The bankruptcy court's decision to exclude evidence is reviewed under an abuse of discretion standard. See McEuin, 328 F.3d at 1032. We conclude that the bankruptcy court did not abuse its discretion in excluding these Exhibits based on the lack of relevance.

Finally, Debtor argues the bankruptcy court erred by allowing "independent people to review this case and provide influential opinions" for its decision, which she suggests was "possible fraud upon the court." It is not clear what Debtor is arguing here; she fails to provide any facts to explain her argument. Therefore, we are unable to address it.

**A. The bankruptcy court did not abuse its discretion by dismissing Debtor's chapter 7 case for bad faith under § 707(b)(3)(A).**

**1. Dismissal under § 707(b)(1) and (b)(3)(A)**

Under § 707(b)(3)(A), a chapter 7 case may be dismissed as

-14-

abusive under § 707(b)(1) if the debtor filed the case in bad faith.[4] Section 707(b) provides, in relevant part:

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by . . . any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter . . . (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted – the court shall consider – (A) whether the debtor filed the petition in bad faith[.]

The moving party bears the burden of proof to support a § 707(b) motion by a preponderance of the evidence. See Aspen Skiing Co. v. Cherrett (In re Cherrett), 523 B.R. 660, 669 (9th Cir. BAP 2014).

Section 707(b) was added to the Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Since BAPCPA, the Ninth Circuit Court of Appeals has not established a standard for determining a finding of "bad faith" in chapter 7 cases under § 707(b)(3)(A). However, some bankruptcy courts have established such a standard in cases including In re Mitchell, 357 B.R. 142 (Bankr. C.D. Cal. 2006). In Mitchell, the bankruptcy court utilized a nine-part test borrowing both from the Ninth Circuit's pre-BAPCPA "substantial abuse" test and from chapter 11

---

[4] The bankruptcy court correctly noted that although Gilliam did not allege the presumption of abuse arose in this case under § 707(b)(2) based on Debtor's Means Test, the court may still dismiss a chapter 7 case for abuse under the alternative test of § 707(b)(3). See Drury v. United States Trustee (In re Drury), 2016 WL 4437555, at *7 (9th Cir. BAP Aug. 23, 2016) (§ 707(b) is framed to consider the presumptive abuse question first, and resorts to the bad faith (or totality of the circumstances) analysis only if debtor survives the means test) (citing Egebjerg v. Anderson (In re Egebjerg), 574 F.3d 1045, 1048 (9th Cir. 2009)); In re Ng, 477 B.R. at 126; Reed v. Anderson (In re Reed), 422 B.R. 214, 229-30, 233 (C.D. Cal. 2009).

and 13 bad faith cases. Id. at 153-56 (citing Price v. United States Trustee (In re Price), 353 F.3d 1135, 1139-40 (9th Cir. 2003) (using a six factor test to determine "substantial abuse" under pre-BAPCPA § 707(b)); In re Leavitt, 171 F.3d at 1224 (employing a four factor test to dismiss bad faith chapter 13 case with prejudice). The Mitchell court set forth the following nonexclusive factors to be considered in determining whether to dismiss a chapter 7 case for bad faith under § 707(b)(3)(A):

1. Whether debtor has a likelihood of sufficient future income to fund a chapter 11, 12 or 13 plan which would pay a substantial portion of the unsecured claims;

2. Whether debtor's petition was filed as a consequence of illness, disability, unemployment, or other calamity;

3. Whether debtor obtained cash advances and consumer goods on credit exceeding his or her ability to repay;

4. Whether debtor's proposed family budget is excessive or extravagant;

5. Whether debtor's statement of income and expenses misrepresents debtor's financial condition;

6. Whether debtor made eve of bankruptcy purchases;

7. Whether debtor has a history of bankruptcy petition filings and dismissals;

8. Whether debtor has invoked the automatic stay for improper purposes, such as to delay or defeat state court litigation;

9. Whether egregious behavior is present.

Id. at 154-55.

In addition to these factors, the Ninth Circuit in Leavitt indicated that whether the debtor misrepresented facts in his or her bankruptcy filings, unfairly manipulated the Bankruptcy Code, or otherwise filed the petition in an inequitable manner should

-16-

also be considered. 171 F.3d at 1224.[5] See also United States Trustee v. Gjurovich (In re Gjurovich), 2010 WL 9485971, at *4 (Bankr. E.D. Cal. Nov. 3., 2010) (considered factors in both Mitchell and Leavitt to dismiss chapter 7 case with prejudice under § 707(b)(3)(A) and § 349(a)).

This Panel has utilized both the tests in Mitchell and Leavitt when considering bad faith dismissals under § 707(b)(3)(A). See Johnson v. Vetter (In re Johnson), 2014 WL 2808977, at *6 (9th Cir. BAP June 6, 2014) (utilizing Mitchell factors for § 707(b)(3)(A) dismissal, but utilizing Leavitt factors for determining whether dismissal with prejudice under § 349(a) was proper); In re Drury, 2016 WL 4437555, at *7 (utilizing Leavitt factors for dismissal); In re Franco, 2016 WL 3227154, at *5 (9th Cir. BAP June 2, 2016) (utilizing Leavitt factors for chapter 7 dismissal with prejudice). Despite the factors used, however, no single factor is considered dispositive. In re Johnson, 2014 WL 2808977, at *6; In re Mitchell, 357 B.R. at 154.

## 2. Analysis

The bankruptcy court considered the factors in Mitchell to determine that Debtor had filed her chapter 7 case in bad faith. It found that factors 3, 4, 6 and 9 were not relevant, a conclusion that Gilliam does not dispute. However, it found that

---

[5] Leavitt set forth the following non-exclusive factors for the court to consider: (1) whether the debtor has stated inaccurate facts in his or her bankruptcy filings, attempted to improperly manipulate the Bankruptcy Code, or otherwise pursued bankruptcy relief in an inequitable manner; (2) the debtor's prior bankruptcy case filings and dismissals; (3) the motivation for the debtor's bankruptcy case filing, including any intent to impede state court litigation; and (4) any egregious conduct.

-17-

factors 1, 2, 5, 7 & 8 were present and weighed in favor of Debtor's bad faith.

**Factors 1 & 5. Likelihood that debtor will have sufficient future income to fund a chapter 11 or 13 plan and that debtor's statement of income and expenses misrepresents financial condition**

The bankruptcy court found that Debtor had seriously misrepresented her income and, thus, her ability to pay debt by omitting a significant amount of income from her SOFA and by timing her bankruptcy filing to artificially lower her stated current monthly income ("CMI").

One major dispute in the case was whether Debtor, as the single member of her LLC, was required to report the gross or net income of Nonim in her SOFA. Debtor contended she was required to report only Nonim's "net" income because she had made an election by filing Form 8832 to have Nonim treated as a corporation for federal income tax purposes. The question became whether the election had in fact been made. Ultimately, the bankruptcy court decided that even if the election had been made, it did not matter for bankruptcy reporting purposes. Citing Cal. Corp. Code § 17202,[6] the court first determined under California law that as a single member LLC, all profits and losses of Nonim would be allocated to Debtor regardless of the entity classification for tax purposes. Debtor complains that in reaching this

---

[6] Cal. Corp. Code § 17202 provides:

The profits and losses of a limited liability company shall be allocated among the members, and among classes of members, in the manner provided in the operating agreement. If the operating agreement does not otherwise provide, profits and losses shall be allocated in proportion to the contributions of each member.

-18-

determination, the court erroneously presumed Nonim had not been classified as a corporation. The court did seem to presume this fact without actually making that determination.

Nonetheless, regardless of the court's reliance on Cal. Corp. Code § 17202, it was correct that Debtor was required to report the "gross" income of Nonim in her SOFA. Paragraph 1 of the SOFA requires debtors to "State **the gross amount of income** the debtor has received from employment, trade, or profession, **or from operation of the debtor's business . . . .**" (emphasis added). The "Definitions" in the SOFA provide, in relevant part:

> An individual debtor is **"in business"** for the purpose of this form **if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case,** any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; **a sole proprietor or self-employed full-time or part-time**[.]

Clearly, Debtor had been "in business" within six years prior to filing the instant case.

The bankruptcy court found that the SOFA instructions are "clear and explicit that gross income from the Debtor's business was required to be disclosed on the [SOFA] and that Debtor disregarded the official instructions and disclosed only net income of her business rather than gross income, which she admits was only approximate and which was not supported by any substantiation whatsoever." Mem. Dec. at 22. The court found that by not reporting the gross income of Nonim, Debtor materially understated her income in years 2012 and 2013 by $381,049.82. In addition, the court found that because Debtor reported only the net income of Nonim and not its gross income and expenses,

-19-

creditors and interested parties were deprived of information critical for the evaluation of Debtor's income-generating capability and the reasonableness of any claimed expenses against gross income. Given the large amount of money involved, the court found that Debtor's failure to disclose Nonim's gross income on her SOFA "was deliberate and was intended to minimize the amount of the previous years' income she had to disclose on her schedules and thereby obscure her true ability to pay debt." Id.

Debtor continues to argue that she had to report only the net income of Nonim because she made the election that Nonim be treated as a corporation. We agree with the bankruptcy court that even if true, this made no difference for bankruptcy reporting purposes. Consequently, Debtor was required to report the "gross" income of Nonim in her SOFA for years 2012 and 2013. Even if she was not, as the bankruptcy court correctly noted, what she did disclose lacked any certainty because she admitted at trial that her stated income figures from Nonim were "guesstimations."

The bankruptcy court also found that Debtor's use of Nonim's funds for personal expenses had further misrepresented her true income for the years 2012 and 2013. Id. at 23-26. In 2013 alone Debtor had withdrawn $101,040 in cash from Nonim's checking account and made check card purchases of $9,944.26.

After a painstaking review of Nonim's bank statements from 2013, the court found that many of the expenses were of a personal nature and not related to Debtor's tax return preparation business. The court found Debtor's testimony that expenses for clothing and related accessories, personal grooming and vacation travel were to attract low-income clients and for employee

incentives not credible based on a lack of corroborative evidence. No witness or documentary evidence supported Debtor's allegation that expenses, such as a prom dress for her daughter in alleged payment for work at Nonim, leisure travel for Debtor and certain relatives to New Orleans as a "reward" for their alleged tax preparation assistance, and gift cards at Ugg and Michael Kors as "rewards" for others for their alleged referrals of potential clients, had a business purpose.

Therefore, having concluded that these expenses were mostly personal expenses, the bankruptcy court attributed them to Debtor as additional income not reported on her SOFA. The court also found that Debtor had failed to establish with any documentary evidence the business purpose for the large amount of cash withdrawals.

Debtor argues that it is not uncommon for a business to have raffles or to provide employee incentives. This contention may be true, but the bankruptcy court chose not to believe Debtor's testimony on this issue. In light of the record, we conclude that the bankruptcy court's choice not to believe Debtor's explanations for these expenses was not clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985) ("[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Debtor also argues that it was Gilliam's burden to show these expenses were not for business purposes. She is incorrect. As a debtor in bankruptcy it was Debtor's obligation and burden to show that her income and expenses were properly calculated and reported in her bankruptcy schedules and SOFA, not Gilliam's. See Cusano v. Klein, 264 F.3d

-21-

936, 946 (9th Cir. 2001) (debtor has a duty to prepare schedules carefully, completely and accurately).

The bankruptcy court also found that Debtor's bankruptcy filing was strategically timed for the purpose of understating her income and ability to pay debt. Mem. Dec. at 26-30. The court found that Debtor deliberately chose October 15 as her filing date in an attempt to manipulate the Means Test calculation in order to hide her true income earning ability. Due to the seasonal nature of Debtor's work as a tax return preparer, the court found that the October 15 bankruptcy filing date served to omit the maximum amount of income which Debtor would have been required to include in her Means Test. October 15 is exactly six months after the general tax return due date April 15, or the end of tax season. As a tax return preparer, Debtor's income is largely concentrated in the few months leading up to April 15. Therefore, the court reasoned that filing six months after April 15 meant that Debtor's CMI reported on her Means Test vastly understated her actual financial status because it is limited to a six-month lookback.

In the court's view, a truer picture of Debtor's regular annual income was found from reviewing her actual income, based on her financial records considered on a yearly basis, rather than on a truncated basis from the CMI of the Means Test, which relied on only a six-month lookback from April to September 2013. Looking at Debtor's gross receipts from Nonim for the previous twelve months between October 1, 2012 though September 30, 2013, revealed a much greater ability of Debtor to repay creditors than what was reflected in her bankruptcy schedules.

For example, TPG records showed that it paid Nonim tax return

-22-

preparation fees of $310.00 in October 2012. From February through May 2013, TPG paid Nonim tax return preparation fees of $102,810.67, which was corroborated by Nonim's bank records. Therefore, Debtor's total gross income for the fiscal year of October 1, 2012 through September 30, 2013, based on fee income paid by TPG, was $103,120.67, which yielded a monthly income average of $8,593.38. This amount exceeded the $5,956.00 in average monthly gross receipts Debtor reported on her Means Test. The court reasoned that if one added the difference in these two figures ($2,637.38) to Debtor's declared total CMI of $5,511.00, it would have yielded an adjusted total CMI of $8,148.38, which multiplied by twelve months would have yielded an adjusted annualized CMI of $97,780.56. This would have exceeded Debtor's declared applicable median family income of $75,656.00 for a family of four in California, or the applicable median family income of $67,401 for a family of three in California, which Debtor should have declared. The court reasoned that Debtor would have then had to list her living expense deductions in order to determine whether or not a presumption of abuse should have arisen under § 707(b)(2), which she did not have to do because she declared an annualized CMI of less than the applicable median family income in the state, thus evading further scrutiny for abuse under § 707(b)(2).

Debtor contends the bankruptcy court erred in determining that "tax season" is from January 1 to April 15; rather, she argues taxes are prepared year round. This argument is a non-starter. The fact remains that Debtor made virtually all of her income from tax return preparation between the months of January

-23-

and April, as reflected in the TPG fee payments and Nonim's bank statements for 2012 and 2013. She also contends the court incorrectly factored in its analysis twelve months of Nonim's earnings instead of six months. Debtor fails to provide any legal argument or cite to any authority establishing that the court could not go outside the six-month lookback in the Means Test for the purpose of determining whether her case was filed in bad faith.

Finally, the bankruptcy court found that Debtor had the ability to continue working as a tax return preparer and earn sufficient income to repay her debts. Mem. Dec. at 30-33. Precisely, the court found that Debtor's occupation as a tax return preparer allowed her to make an income without relying on a separate entity for employment, as evidenced by the fact that she was and is self-employed as a tax return preparer and operated her tax return preparation business either as a sole proprietor or as the sole member of Nonim. Debtor's "excuse" that she could no longer work with her previous clients because she felt it would be "embarrassing" was "not credible." Id. at 30-31. Plus, this testimony contradicts what Debtor stated in her Schedule I, that although Nonim was insolvent her tax preparer license was current and that she would work as an independent contractor.

The bankruptcy court rejected Debtor's argument that the Receiver's takeover of Nonim's premises adversely affected her ability to generate income. The Receiver took over the premises between July and September 2013. This appeared to have minimal impact on Debtor's tax preparation business because nearly all of the tax preparation income was generated between January and April

-24-

2013. The court also rejected Debtor's argument that because of the Receiver's takeover during that time she lost clients and the ability to file any extensions by October 15, 2013. The evidence showed that in 2012 only 11 out of 1,321 fee distribution entries for Debtor's clients were for tax returns processed and paid after June 15. Thus, the inference was that very few of Debtor's clients in 2013 would have been filing tax returns after the general tax return date of April 15. More importantly, noted the court, the Receiver's occupancy for those three months in 2013 did not impede Debtor — an independent and self-employed tax return preparer — from continuing to prepare tax returns in the future.

We perceive no clear error in any of these findings and conclude that the bankruptcy court did not err in determining that Gilliam had established the first and fifth factors in Mitchell.

**Factors 7 & 8. Debtor's history of bankruptcy filings and dismissals and whether debtor invoked the automatic stay for improper purposes, such as to delay or defeat state court litigation**

It is "bad faith to file bankruptcy to impede, delay, forum shop, or obtain a tactical advantage regarding litigation ongoing in a nonbankruptcy forum — whether that nonbankruptcy forum is a state court or a federal district court." In re Silberkraus, 253 B.R. 890, 904 (Bankr. C.D. Cal. 2000), aff'd, 336 F.3d 864 (9th Cir. 2003). The bankruptcy court analyzed these two factors together and found by a preponderance of the evidence that Debtor was improperly invoking the automatic stay for strategic state court litigation purposes by repeatedly filing for bankruptcy. Mem. Dec. at 33-38. Hence, this also supported dismissal of Debtor's chapter 7 case for bad faith under § 707(a)(3)(A).

-25-

The bankruptcy court determined that Debtor's second chapter 13 case filing and bad faith dismissal highlighted the admitted fact that her prior bankruptcy case filings were motivated by her effort to defeat Gilliam's state court litigation efforts. In reviewing the tentative ruling for the dismissal, the bankruptcy court considered Judge Robles's findings that "Debtor understated her income," and that the "mere fact that Debtor is abusing the Court system to avoid paying her judgments and to avoid following the Court's order in providing documents for a debtors' exam" was sufficient evidence for a dismissal for bad faith. The court also considered Judge Robles's findings that the "timing of Debtor's two bankruptcy cases appears to have been to avoid the production of documents and a fee award," which evidenced an "unfair manipulation" of the bankruptcy system, a "history of filings and dismissals," and "Debtor's intent to defeat state court litigation." Judge Robles concluded by finding that Debtor had not provided a "justification for the timing" of her bankruptcy filings. At the dismissal hearing, Judge Robles observed that the situation was really about a state court dispute between Debtor and Gilliam (Debtor's admitted only creditor at the time) that found its way into bankruptcy court. He then announced his intent to dismiss the case for bad faith and signed the dismissal order.

The bankruptcy court went on to find that Debtor's intent to defeat Gilliam's state court litigation efforts continued prior to her filing this chapter 7 case on October 15, 2013. The Default Judgment of $53,555.42 was entered December 17, 2012, for claims of fraudulent conveyance, malicious prosecution, and injunctive

relief. The judgment specifically amended prior judgments to include Nonim and granted injunctive relief ordering Debtor and Nonim not to transfer any assets without court permission. The evidence of Nonim's bank statements showed numerous and substantial cash and purchase card withdrawals by Debtor from Nonim's bank accounts after the state court issued the injunction, which included the $101,040 in cash withdrawals and the $9,944.26 in check card purchases. The bankruptcy court found that these transfers made by Debtor were without state court authorization in violation of the injunction because Debtor offered no evidence to show otherwise. She does not dispute this finding on appeal. As further evidence of her intent to defeat Gilliam's state court litigation efforts, the bankruptcy court noted the Receiver's demand letters and testimony that Debtor had failed to comply with his multiple demands for turnover of Nonim's books and records.[7]

Ultimately, the bankruptcy court found:

[B]ased on the evidence of Debtor's history of bankruptcy filings and dismissals, which show that these filings were strategically timed to aid Debtor's state court litigation position with respect to Creditor as indicated by the timing and sequence of Debtor's actions to defeat Creditor's collection efforts and bankruptcy filings after unfavorable results in Creditor's collection litigation against her, including transfer of her tax return preparation business to a controlled entity, Nonim, held by the state court to be a fraudulent transfer, and transfers of funds and assets belonging to her and her controlled entity, Nonim, in violation of the state court's injunction order, this factor showing Debtor's continued abuse of the bankruptcy system weighs in favor of dismissal for bad faith.

---

[7] Because Debtor had resumed control over Nonim's premises after September 25, 2013, the court also found that she had complete access to her books and records, which would have allowed her to determine with accuracy the gross income from Nonim as opposed to her admitted "guesstimations." Mem. Dec. at 37-38.

-27-

Mem. Dec. at 38.

We see no clear error in any of these findings and conclude that the bankruptcy court did not err in determining Gilliam had established the seventh and eighth <u>Mitchell</u> factors.

**Factor 2. Consequence of illness, disability, unemployment or other calamity**

One mitigating factor in determining bad faith under § 707(b)(3)(A) is "whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity." <u>In re Mitchell</u>, 357 B.R. at 155. The bankruptcy court found by a preponderance of the evidence that Debtor's chapter 7 case was not filed as a consequence of "illness, disability, unemployment, or some other calamity." We also perceive no clear error in this finding.

Debtor testified that one of the main reasons she filed this chapter 7 case was due to medical bills she had incurred both before and after the filing because of a recent illness, blood transfusion, hospital stay and surgery. Despite her testimony, the bankruptcy court found that Debtor had not offered any specific details about her medical condition and how it affected her ability to work and earn income, either in the past or the future. Nor had she offered any evidence to corroborate her "conclusory testimony" on her medical condition or treatment; she did not call any expert witnesses to testify as to her medical condition or treatment and provided no written documentation to corroborate her health claims. Mem. Dec. at 39-40. The only documentary evidence Debtor provided to support her contention of illness was her Schedule F, which indicated that her alleged

-28-

medical condition occurred in 2012. However, observed the court, in 2013 Debtor had earned $102,810.67 in gross income from tax preparation fees paid to Nonim, which evidenced that her medical condition did not impair her ability to earn substantial income from her self-employment as an income tax return preparer and repay her debts. We also note that the medical debts she claimed in her Schedule F make up a fairly small portion of her claimed unsecured debt of over $245,000.

The only error Debtor assigns here is that Gilliam failed to produce any evidence to show that she has not suffered, or is not suffering, from the illness that she claims. Because this is a mitigating factor as to Debtor's bad faith, it is her burden to establish that her illness consequently led her to file this chapter 7 case. While Debtor contends that her health issues are "private," she claims to have the bills to evidence her debilitating medical condition. Why she did not present them at trial is unknown. Unfortunately, the bills do her no good now.

Given the evidence, the bankruptcy court's proper application of the law and Debtor's failure to establish that the court's finding of "bad faith" was clearly erroneous, we conclude that the bankruptcy court did not abuse its discretion in dismissing Debtor's chapter 7 case for bad faith under § 707(b)(3)(A).

///
///
///
///
///
///

-29-

**B.    The bankruptcy court did not abuse its discretion by dismissing Debtor's chapter 7 case with prejudice under § 349(a).**[8]

**1.    Governing law**

Once a court has determined that cause to dismiss exists, it must then decide what form of dismissal should apply. Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth), 455 B.R. 904, 922 (9th Cir. BAP 2011). Section 349(a) establishes a general rule that dismissal of a case is without prejudice but expressly grants a bankruptcy court the authority to dismiss the case with prejudice which "bars further bankruptcy proceedings between the parties and is a complete adjudication of the issues." In re Leavitt, 171 F.3d at 1223-24. Functionally, then, a dismissal with prejudice is equivalent to a judgment under § 523(a) that each debt that would have been discharged is now nondischargeable. In re Ellsworth, 455 B.R. at 921-22.

Upon a finding of bad faith, a bankruptcy court may dismiss a case with a permanent bar to refiling for bankruptcy to discharge existing, dischargeable debt. In re Leavitt, 171 F.3d at 1224 (bad faith is "cause" for dismissal with prejudice under § 349(a)).

When dismissing with prejudice courts are to consider the following factors:  (1) whether debtor misrepresented facts in the petition, unfairly manipulated the Bankruptcy Code, or otherwise filed in an inequitable manner; (2) debtor's history of filing and

---

[8]  Section 349(a) provides, in relevant part, that "[u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not . . . prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title."

-30-

dismissals; (3) whether debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present. In re Leavitt, 171 F.3d at 1224. Although Leavitt involved a chapter 13 case, we believe the same standards for dismissing a chapter 7 case with prejudice would also apply. See In re Johnson, 2014 WL 2808977, at *7 (applying Leavitt factors to chapter 7 dismissal with prejudice under § 349(a)); In re Mitchell, 357 B.R. at 154.

## 2. Analysis

The bankruptcy court determined that, based on the evidentiary record, Gilliam had established by a preponderance of the evidence that the "drastic remedy" of dismissing Debtor's bankruptcy case with prejudice was warranted. Mem. Dec. at 41-44.

Although the court did not expressly refer to the Leavitt factors in its decision to dismiss Debtor's case with prejudice, it appears to have applied the standard set forth in Leavitt by finding that: (1) Debtor misrepresented her income on her SOFA by substantially understating her business income for 2012 and 2013; she reported only Nonim's "net" income, when the SOFA clearly stated that she was to disclose "gross" income from Nonim or any other business; (2) Debtor had access to Nonim's 2012 and 2013 bank statements showing $506,846.82 in deposits representing Debtor's gross business income from tax return preparation fees through Nonim, yet she chose to only disclose a total of $144,377 from this business for these years, which she admitted were "guesstimations;" (3) Debtor's multiple bankruptcy filings, including this one, demonstrated her intent to hinder, delay and defraud Gilliam in his collection efforts on judgments from both

-31-

the state and bankruptcy courts; (4) the state court found that Debtor had fraudulently conveyed her sole proprietorship tax return preparation business to her self-created LLC, which she controlled as the single member; and (5) Debtor ignored and disobeyed the state court's order that she individually and through Nonim not transfer any of their assets as demonstrated by Nonim's bank account records showing substantial cash and purchase card withdrawals by Debtor after the judgment and injunction were issued against Debtor and Nonim in December 2012. Arguably, the bankruptcy court made findings against Debtor on all four of the Leavitt factors.

Debtor raises two arguments here, neither of which has any merit. First, she contends that because Gilliam did not request that her case be dismissed with prejudice until his late-filed supplemental brief on December 2, 2013, the bankruptcy court could not consider this relief. We already addressed a similar argument above. Because Gilliam filed the brief (a reply) only one day before the initial hearing on his Motion to Dismiss, the bankruptcy court reserved ruling on it and set the matter for trial. At the hearing on December 3, 2013, Debtor asked for an opportunity to respond to the brief, which the court gave her. Despite having many months to file a written response, Debtor failed to do so. It was also clear at trial, as evidenced by his trial brief, that Gilliam was seeking dismissal with prejudice. Thus, Debtor had notice of his claim for relief, and the court was free to consider it. In fact, Gilliam requested only a four year refiling bar, but apparently in considering the egregiousness of Debtor's conduct, the bankruptcy court felt that a permanent bar

-32-

was more appropriate.  On this same note, Debtor contends the bankruptcy court "lacked jurisdiction" to decide if her case could be dismissed with prejudice.  Even if Gilliam had not requested such relief, the court certainly had "jurisdiction" over the issue.

Because the bankruptcy court applied the correct legal test under Leavitt and its factual finding of bad faith is supported by the record, which in turn supports a finding of "cause" to dismiss with prejudice under § 349(a), we cannot conclude that dismissing Debtor's chapter 7 case with prejudice was an abuse of discretion.

**VI. CONCLUSION**

For the foregoing reasons, we AFFIRM.

-33-